Mariana DuPont SILLIMAN, Plaintiff,

v.

F. I. DuPONT et al., Defendants.

Superior Court of Delaware,
New Castle.

Dec. 29, 1972.

———◆———

Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.

James M. Tunnell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant, Edmond DuPont.

Januar D. Bove, Jr., and Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, for defendant F. I. DuPont, Glore Forgan & Co.; Peter Gruenberger and James W. Quinn, of Weil, Gotshal & Manges, New York City, of counsel.

## OPINION

WALSH, Judge.

Plaintiff, Mariana DuPont Silliman, filed this action on April 27, 1971 under the provisions of 10 Del.C. Chapter 65 (Declaratory Judgments), seeking an adjudication concerning the responsibility of defendants relative to a loan secured by her from the Wilmington Trust Company. The complaint originally named as defendant F. I. DuPont, Glore Forgan & Co., a New York limited partnership (DGF) and sixty-eight individuals characterized as general partners of DGF. Included among the individual defendants was Edmond DuPont (Edmond) at whose behest the plaintiff secured the loan for the apparent purpose of permitting Edmond to invest the proceeds in the partnership at a time when DGF was in financial difficulty. Plaintiff alleges that since said loan was

for the benefit of DGF and made upon its urging and representations, the partnership should share the responsibility for its repayment. On the date this suit was entered, the plaintiff filed a companion action in the Supreme Court of the State of New York seeking parallel relief against the same defendants.

DGF, which maintains an office in this State, was served with process and thereafter filed an answer within 20 days generally denying plaintiff's claim and raising as affirmative defenses: lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted and Statute of Frauds.[1] On the same day a motion to dismiss for lack of personal jurisdiction was asserted on behalf of all individual defendants except Edmond. While the matter was being briefed, plaintiff voluntarily dismissed the complaint as to those moving defendants.

Shortly after the filing of suit, plaintiff had initiated certain discovery measures which were held in abeyance by agreement of the parties pending the resolution of DGF's efforts in the New York action to stay further proceedings in Delaware. The matter lay dormant for more than a year awaiting the decision in New York. That ruling, made on September 18, 1972 denied DGF's motion, which had the effect of reactivating this proceeding.[2]

Shortly after the New York order was entered plaintiff moved in this Court to compel discovery whereupon DGF filed a motion for judgment on the pleadings in accordance with Superior Court Rule 12(c), Del.C.Ann., and sought, as well, a stay of discovery.[3] These cross-motions are now before the Court for determination. The thrust of DGF's motion is that upon the voluntary dismissal of the individual general partners, the plaintiff transformed her action into one against a nonjural entity, i. e., the partnership, which cannot be sued in its own name. Plaintiff counters, that preliminarily DGF has waived its right to so move through the filing of an answer not raising that defense and in any event DGF as a limited partnership is subject to suit in its partnership name alone without the joinder of its individual partners. Simply stated, the primary issue in this case is whether a limited partnership exists separate from its component partners for purpose of suit.

I

A threshold issue is also posed. Plaintiff contends that DGF has waived any objection concerning its capacity to be sued by its common name, through failure to raise that issue as required by Civil Rule 9(a) which provides in pertinent part:

"When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, supported by affidavit when required by Rule 8(dd), which negative averment shall include such supporting particulars as are peculiarly within the pleader's knowledge."

Not only was the issue of capacity not raised as part of its answer, plaintiff argues, but DGF admitted its partnership

---

1. In the interim, the assets of DGF had been absorbed by its corporate successor PERHM Securities, Inc. with the written consent of plaintiff upon agreement by the corporate transferee to assume liability for any judgment ultimately entered against DGF in either the Delaware or New York actions.

2. The parties disagree concerning the meaning of the stipulation staying discovery pending the resolution of DGF"s New York motion. Plaintiff claims the parties intended to stay discovery only until an initial decision in New York. DGF recognizes no such limitation.

3. Edmond continues as a defendant in this action after having filed a belated answer but takes no position on the pending motions.

existence, the doing business in this State and the fact that certain of its general partners were also named defendants. Moreover, through the same counsel the individual defendants, except Edmond, filed motions attacking both service of process and lack of personal jurisdiction. DGF, thus armed with knowledge of the jurisdictional problem of the individual defendants cannot plead ignorance of the capacity issue at the time its answer was filed. DGF counters that the issue of lack of capacity to be sued did not arise until June 11, 1971, when plaintiff dismissed the action as to all individuals except Edmond. From that date until the filing of the motion (October 2, 1972) the Delaware action lay dormant while the parties litigated in New York. Thus, DGF argues, the issue has not been waived and may be asserted now in its Rule 12(c) motion which includes a Rule 12(b)(6) defense of failure to state a claim upon which relief can be granted. In addition to, and in support of, its principal defense of capacity to be sued DGF raises the argument that the remaining partners are indispensable parties and their presence is essential to the disposition of this lawsuit.

■ Capacity to sue or be sued while required initially to be raised by negative averments in responsive pleadings as required by Rule 9(a) are not irrevocably lost as defenses where incapacity appears on the face of the complaint. Klebanow v. New York Produce Exch., C.A.2d, 344 F. 2d 294 (1965); Hershel California Fruit Prods. Co. v. Hunt Foods, Inc., D.C.Cal., 119 F.Supp. 603 (1954). The primary purpose for the "negative averment" requirement in a responsive pleading is to place the opposite party on notice at the earliest practicable stage in the litigation, that capacity is in issue. 5 Wright & Miller, Federal Practice and Procedures, Section 1295. Moreover, if the pleading party is unaware of the capacity issue at the time of the pleading, he may raise lack of capacity under a motion to dismiss when he becomes aware of such fact. Pasos v.

Eastern S. S. Co., D.Del., 9 F.R.D. 279 (1949). In *Pasos*, Judge Rodney dismissed a Jones Act proceeding upon motion of the defendant filed after it became aware that the plaintiff had died prior to the initiation of the action. In holding that absence of a legally existent plaintiff was essential to the Court's ability to take cognizance of the matter, he commented "that it would be an unnecessary refinement to require an amended answer" to raise that issue and permitted it to be raised despite the language of Rule 9(a).

■ In the present case the complaint on its face appeared to encompass all the general partners, as well as the partnership entity itself, and, while it is unclear how plaintiff intended secure service over the individual defendants, nonetheless, at the time DGF filed its answer the general partners were still named as parties defendant. Upon the dismissal by plaintiff of the individual defendants, except Edmond, the issue of capacity of DGF, standing alone, was sharply in focus. I find accordingly that under the circumstances it was not foreclosed from raising that issue under a Rule 12(c) motion. Moreover, DGF's 12(c) motion involves Rule 12(h)(2) which permits adjudication of legal issues raised by the pleadings, including capacity to sue. Whatever doubt existed prior to 1966 has been resolved by the recent change which one authority has characterized as follows:

"Instead of the broadly worded waiver provision that existed before 1966, Rule 12(h) now specifically lists the defenses that are subject to waiver at each stage of the litigation. Want of capacity is not among those enumerated. Arguably, therefore, objections to capacity should be governed by the defense of failure to state a claim for relief, which continues to be preserved until after trial on the merits by Rule 12(h)(2), in the absence of more specific guidance." Wright & Miller, Federal Practice and Procedure: Civil § 1295.

It is noteworthy that plaintiff in dismissing the sixty-seven individual defendants, in effect, amended her complaint. This is an additional reason why DGF should not be foreclosed from raising jurisdictional defenses subsequent to the filing of the original answer. Finally, there is no prejudice here since this litigation is still in the pleading stage and plaintiff has not lost any jurisdiction she otherwise would have obtained.

Having determined that DGF may properly raise at this juncture its capacity to be sued as a limited partnership, I now turn to the merits of its motion.

## II

Historically, a partnership, unlike a corporation did not enjoy "entity" status, i. e., it had not been considered a jural person but a collection of persons with aggregate rights. The aggregate concept of partnership was universally accepted at common law and, indeed, was entirely consistent with the functioning of common law partnerships. Rowley on Partnerships, 2d Ed., Sec. 1.3. In early times, firms or associations were small in membership and their creditors or other parties dealing with them had little difficulty in ascertaining the identity of the members. With the advent of large mercantile partnerships and unincorporated associations comprising many members, such as labor unions, it became burdensome to identify, much less secure effective service on, all the members of the association. It was against this background that the so called "common name" statutes were enacted. The basic purpose of these statutes was to permit a non-corporate entity to be sued in the name it presented to the public without the necessity of joining the many individuals who composed it.

Title 10 Del.C., § 3904, the Delaware counter-part of statutes of similar import appearing in many jurisdictions provides:

"Whenever any business is transacted in this State by an unincorporated association of persons using a common name, ordinary partnerships excepted, suits may be brought and the pleadings conducted against the individuals composing such association by such common name, and judgment recovered therein shall be a lien like other judgments, and may be executed by levy, seizure and sale of the personal and real estate of such association, and also that of the persons in the same manner with respect to them as if they had been made parties defendant by their individual names. Satisfaction thereof may also be obtained by attachment process."

This act has been a part of Delaware statutory law for more than 100 years. It first appeared as § 1 of Chapter 32, Volume 13 of the Laws of Delaware, enacted in 1866 in the following form:

"That whenever any business is transacted in this State by an unincorporated association of persons using a common name, (ordinary partnerships excepted,) suits may be brought and the pleadings conducted against the individuals composing such association by such common name, and judgment recovered therein shall be a lien like other judgments, and may be executed by levy, seizure and sale of the personal and real estate of such association, and also that of the said persons in the same manner with respect to them as if they had been made parties defendant by their individual names; satisfaction thereof may also be obtained by attachment process. And after the first day of July next, no unincorporated association of persons (partnerships as aforesaid excepted) shall transact business in this State unless the individual names of all concerned therein shall be first certified by an officer of such association to the Prothonotary of each county, to be filed in his office; any person violating this provision shall forfeit and pay five hundred dollars to any person who will sue for the same."

The statute remained without significant change until the 1953 codification at which time the last sentence was severed and given separate status as § 3104 of Title 6. In making this change the codifiers changed the parenthetical expression "partnership as aforesaid excepted" to read "this section shall not apply to partnerships." Apparently, no effort was made to accord any distinction to the term "ordinary" for purposes of registration of partnerships.

■ Despite the partial severance of the original act, § 3904 continues to have significance as a common name statute and certain features of the statute are particularly noteworthy. First, it requires that the common name defendant be transacting business in the State. Secondly, it deals only with the question of capacity to be sued and not capacity to sue. Finally, it provides that any judgment recovered against the common name association shall be the same as judgments obtained in any other manner. These elements reflect an obvious legislative effort to protect persons doing business with unincorporatd associations within this State from the necessity of joining all individual members as a prerequisite to filing suit within this State. The common name statutes, while remedial, have procedural effect only, and do not change the substantive law of partnerships. E. I. Du Pont de Nemours Powder Co. v. Jones, D.C.S.D. Ohio, 200 F. 638 (1912); Crane on Partnership, Hornbook Series, Second Edition, Section 60, p. 325.

■ Thus it is unnecessary to consider all the substantive ramifications of the Uniform Partnership Act (Title 6, Chapter 15 Del.C.) to determine if § 3904 is necessarily inconsistent with the Act. The Act is not intended to deal with the question of the capacity of a partnership to be sued in the State in which it does business but rather is directed to defining the substantive responsibilities of the partners, *inter sese*, and with respect to third parties.[4]

It remains, of course, to determine the significance to be accorded to the phrase "ordinary partnerships excepted" which appears in § 3904. DGF considers it dispositive. It argues that the phrase is intended to exclude all partnerships from the provisions of § 3904, and thus the common law aggregate rule remains unalloyed. To the contrary, plaintiff argues that the term "ordinary partnership" is a phrase having specialized meaning and is intended to cover only the type of partnerships which are considered non-commercial, *i. e.*, occupational and professional partnerships.

■■ The term "ordinary partnership" had its origin in the civil law, which historically adhered to the entity theory of partnership, but in common law jurisdictions the term was accorded the meaning of a non-commercial enterprise devoted to a professional or occupational undertaking as distinguished from a commercial or trading partnerships. 1 Rowley on Partnerships, 2d Ed. § 6.9, p. 95. In Tatum v. Acadian Production Corp., D.C.La., 35 F. Supp. 40 (1940), the distinction was made within the context of the Code of Louisiana, a civil law jurisdiction:

"A partnership must contain 'general' partners, or at least one such; it may be the commercial partnership described under Article 2825 of the Louisiana Code, or the ordinary. To such an existent partnership—whether commercial or ordinary—there may legally become attached or incorporated a 'special' or 'limited' partnership; but there can be no 'limited' partner, unless there actually exists a partnership, and no partnership

---

4. The evolution of the Uniform Partnership Act and its adoption by more than forty states has not settled the "entity vs. aggregate" conflict. The Act has been viewed as a realistic accommodation of entity theory to aggregate practice which leaves unresolved many problems concerning the legal nature of partnerships, including capacity to be sued. See, Jensen, Is a Partnership Under the Uniform Partnership Act an Aggregate or an Entity?, 16 Vanderbilt L.Rev. 377 (1963).

can exist unless there be at least one 'general' partner."

I find this distinction historically persuasive and consistent with apparent legislative intent. The legislature intentionally modified the term "partnership" by use of the word "ordinary". Had the General Assembly intended the exclusion of all partnerships from the ambit of the act, it could have done so by the mere omission of the word "ordinary". Its failure to do so I consider significant since every word used in a legislative enactment should be accorded weight. State v. Brown, Del. Supr. 195 A.2d 379 (1963). Moreover, this distinction is consistent with the remedial nature of the statute which was designed to protect the residents of the State from the activities of unidentifiable associations engaged in business under assumed or common names.

Woolley viewed the Delaware common name statute as both remedial and in derogation of the common law:

> "This procedure is of statutory origin, and the association, for the purpose of suit, strongly resembles corporations. The necessity for such a provision arose, when the number of unincorporated lodges, orders and business concerns that were neither corporations nor partnerships, became numerous. The customary method of entitling an action against an unincorporated association of the kind contemplated by the statute, is as follows:
>
> > 'John Albert Senderling v. Adams' Express Company, an unincorporated association of persons transacting business in the State of Delaware, using a common name, and not being an ordinary partnership.'
>
> It will be observed that this statute is restricted to suits and pleadings against an unincorporated association of persons, and does not extend to such an association the right to institute an action by its common name." (1 Woolley Delaware Practice, Sec. 144, p. 91.)

Significantly, the example employed by Woolley characterizes the defendant as a "Company", a designation also appearing, by abbreviation, in the full business name of DGF.

DGF has engaged in a substantial brokerage business in this State for many years without registration or identification of the persons represented by the firm name. It has assets of over $500 million, maintains offices in 36 states and holds memberships on the leading stock exchanges. Behind its assumed name stand 68 individuals who are general partners plus an undetermined number of other investors of limited participation. The size of the enterprise, the diversity of its partners and the scope of its operations render it much more analogous to a corporation than a partnership.

■ DGF tacitly concedes that if its position has merit, the effect is to render it not amenable to suit in this jurisdiction despite the volume of business it, or its predecessor, has conducted for many years in this State. Such a result creates the precise grievance which common name statutes were designed to eliminate. It is no answer to state that as a New York limited partnership, DGF is subject to entity suit in that State and conceivably under varying statutes in other jurisdictions as well. A litigant should not be required to follow a business entity to its home state to seek redress of a local grievance in the face of a statute designed to provide a local forum.

■ DGF argues that Delaware's nonadoption of Rule 17(b) of the Federal Rules of Civil Procedure, which permits entity suits, was a deliberate rejection of the entity theory in suits against partnerships. An equally valid rationale for nonadoption is that the rule in question is a peculiarly federal one to the extent it deals with diversity matters and, as to other issues of capacity, defers to state law.

The Delaware cases advanced by DGF as authority for the disallowance of suits

against the partnership entity are of limited assistance. In United Industrial Corp. v. Nuclear Corp. of America, D.C.Del., 237 F.Supp. 971 (1964) the dismissal of the action against the defendant partnership was based principally, if not solely, on the ground that the partnership did not transact business within Delaware. Barber v. Clendaniel, Del.Super., 7 Boyce 11, 30 Del. 11, 102 A. 84 (1917); Hitch v. Charles T. Gray & Co., Del.Super., 1 Marvel 400, 41 A. 91 (1895); and Roberts v. Rowan & Co., Del.Ch., 2 Har. 314 (1837) all dealt with the issue of a plaintiff partnership's capacity to sue without joinder of all individual partners. The impact of Section 3904 or its statutory predecessor on the capacity of a partnership to be sued in its common name was not considered.

Finally, DGF contends that the individual partners are indispensable joint obligors and their absence should bar proceedings against the partnership entity. Joint obligors who are non-residents and not subject to service have been held to be merely conditionally necessary parties and their non-presence does not abort the proceeding. Scott v. Kay, Del.Supr., 227 A.2d 572 (1967). Moreover, acceptance of DGF's argument of indispensable parties would be at variance with the legislative purpose expressed in § 3904 that suits may be commenced and proceed to judgment without the participation of individual partner-defendants.

■ In summary, I hold that plaintiff may maintain this action against DGF as a partnership entity alone without joinder of the individual partners.

### III

■ DGF also seeks to stay any further discovery by plaintiff in this matter pending a resolution of its 12(c) motion. It argues that, since its motion is directed to the jurisdiction of this Court to adjudicate the dispute, any discovery on the merits of plaintiff's claim may prove to be a nullity. It is sufficient to note that, for present purposes at least, the jurisdictional attack has been rejected and no impediment exists to an adjudication on the merits. In any event the dispute between the parties will be heard eventually either in New York or in Delaware and discovery secured in either forum will be useful.

Nor am I persuaded that the parties have by stipulation precluded the further exercise of discovery pending DGF's appeal of the New York decision. Their sharply divergent views of what the stipulation was intended to accomplish, renders it meaningless for present purposes. Application of Wilmington Suburban Water Corp., Del.Super., 203 A.2d 817, affd. in part, Del.Supr., 211 A.2d 602. DGF's motion to stay further discovery is denied.

Counsel for plaintiff is requested to prepare an appropriate order.

It is so ordered.