

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-13-1996

# HB Gen Corp v. Manchester Partners

Precedential or Non-Precedential:

Docket 95-5396

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"HB Gen Corp v. Manchester Partners" (1996). *1996 Decisions.* Paper 73.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/73

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 95-5396
_____

HB GENERAL CORP.;
HB LIMITED REALTY CORP.

Appellants

v.

MANCHESTER PARTNERS, L.P.

Defendant/Third-Party Plaintiff

v.

H.B. PARTNERS,
L.P. AND VANDERBILT DEVELOPMENT CORPORATION

Third-Party Defendants

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 94-cv-05160)

_____

Argued: March 21, 1996

Before:  BECKER, McKEE, Circuit Judges, and
POLLAK, District Judge.

(Filed September 13, 1996)

PETER D. ISAKOFF, ESQUIRE (ARGUED)
JAMES W. ROBERTSON, ESQUIRE
Weil, Gotshal & Manges
1615 L Street, NW
Washington, DC  20036

FREDERIC K. BECKER, ESQUIRE
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, NJ  07095

Attorneys for Appellants, HB General Corp;
HB Limited Realty Corp.

GAGE ANDRETTA, ESQUIRE (ARGUED)
ARTHUR S. GOLDSTEIN, ESQUIRE
JENNIFER E. MORRIS, ESQUIRE
Wolff & Samson
5 Becker Farm Road
Roseland, NJ  07068

Attorneys for Appellees-Defendants/Third-Party
Plaintiffs, Manchester Partners, L.P.

_____

OPINION OF THE COURT
_____

BECKER, Circuit Judge.

This is a diversity suit arising out of a dispute among the members of a small limited partnership, HB Partners, L.P. Plaintiffs HB General Corp. and HB Limited Corp., brought suit in the district court against the third partner, Manchester Partners, L.P., seeking a declaratory judgment that Manchester had breached the Partnership Agreement.  Although there is complete diversity among the three partners, Manchester argues that the Partnership itself -- which shares the citizenship of all of the parties -- is an indispensable party whose joinder destroys diversity jurisdiction.  The district court agreed with Manchester and dismissed the case.  Resolution of the other partners' appeal turns on the interplay between the "technical, precedent-bound" rule that, for diversity jurisdiction purposes, a limited partner is considered a citizen of each state in which its partners are citizens, and the flexible, pragmatic federal procedural rules of joinder.

We reverse.  Applying the joinder rules pragmatically, we hold that, because all of the partners of this small limited partnership are before the district court, joinder of the partnership entity is not required.  Specifically, we conclude that, given proper protective provisions in the judgment, proceeding in the absence of the Partnership will cause no prejudice to Manchester; that the Partnership is effectively represented by the partners and consequently suffers no prejudice from its exclusion; that whether or not the plaintiffs' claims are "derivative" is immaterial; and that Manchester's counterclaims can be heard in this federal court action and thus there is no risk of piecemeal litigation.  For these reasons, the requisites of Federal Rule of Civil Procedure 19 are satisfied. We also hold that under Delaware law, the source of any cause of action plaintiffs have for breach of the Partnership Agreement, they are real parties in interest within the meaning of Federal Rule of Civil Procedure 17.

I. Facts and Procedural History

HB Partners, L.P. (the Partnership) was formed in October

1991, to develop three properties in Manchester, Vermont for commercial leasing. At its inception, the Partnership consisted of one general partner, plaintiff HB General Corp., and two limited partners, plaintiff HB Limited Realty Corp. and defendant Manchester Partners, L.P.. HB General and HB Limited (the HB entities) are controlled by Ben Hauben, a major developer of retail stores in Vermont. They are both Delaware corporations with their principal places of business in Vermont. Manchester is organized under New Jersey law and all of its partners are New Jersey residents. The Partnership was formed under Delaware law, and Delaware law governs construction of the Partnership Agreement.

Under that Agreement, Manchester was to provide the bulk of the Partnership's capital. It contributed $990,000 at the Partnership's formation and was to provide additional capital up to a total of $1,980,000 in response to capital calls made by the general partner, HB General. The Partnership Agreement provides that HB General may call for additional contributions of capital whenever the Partnership will hold less than $500,000 in cash or cash equivalents in the ensuing thirty days. Each capital call can be for up to $500,000, of which ninety-nine percent is to be paid by Manchester and one percent by HB General.

HB General made a series of capital calls which were met by Manchester without incident. However, problems arose in the summer of 1994. On June 10, 1994, HB General made a capital call for $250,000, of which Manchester's share was $247,500. Manchester sent a check for this amount, but placed conditions on its use, demanding that the funds be held in escrow until all building permits and required approvals were obtained. HB General found these conditions improper and returned the check to Manchester. On August 11, 1994, HB General again made a capital call, this time for $400,000, $396,000 of which was due from Manchester. Manchester notified HB General by letter dated September 13, 1994, that it would not make the capital contribution.

The Partnership Agreement provides that if Manchester fails to make a requested capital contribution, it will be considered to have withdrawn from the Partnership and shall have no further rights as a partner. In such event, Manchester becomes a subordinated creditor of the Partnership and is entitled only to a return of its capital contributions at a specified time in the future. The HB entities assert that Manchester's failure to meet the August 11 capital call has triggered this provision. They brought this declaratory judgment action in the district court, seeking a declaration that Manchester has lost its status as a limited partner and is now a subordinated creditor. Federal jurisdiction was asserted on the basis of diversity of citizenship.

According to Manchester, however, the parties' dispute is much more complicated than whether Manchester failed to meet a simple capital call. Manchester asserts that at the time of the August 11 capital call, the Partnership was significantly behind schedule in developing the Vermont properties, and that HB General had failed to meet numerous requirements of the

Partnership Agreement.  Manchester claims that because of these problems, it had informed HB General -- prior to the final capital call -- that it would exercise its "redemption option." This option, provided for in the Partnership Agreement, allows Manchester to have its Partnership interest "redeemed" at a price specified by formula in the event that the Partnership fails to commence construction on two of the three properties (the Manchester Square II Property and the Riverbend Property) by October 10, 1994.  The agreement states that if the Partnership does not pay the redemption price, Manchester's sole remedy is to compel a sale of any undeveloped parcels then owned by the Partnership.

Manchester maintains that by August 11, 1994, when HB General made the final capital call, HB General knew both that the Partnership could not commence construction on the Manchester Square II Property and the Riverbend Property by October 10, 1994, and that Manchester intended to exercise its redemption option.  Manchester claims that HB General made the capital call in bad faith to force Manchester to choose between infusing a substantial sum of cash into the Partnership just prior to exercising its right of redemption -- money that might not be recoverable given the redemption option's limited remedy -- or defaulting on its obligation.

According to Manchester, it intended to file suit to force HB General to recognize Manchester's right to exercise its redemption option, but before it could do so, the HB entities filed this action.  Manchester therefore counterclaimed against HB General and HB Limited, and against third-party defendants, the Partnership itself and Vanderbilt Development Corporation (another entity controlled by Ben Hauben).  Manchester complains that because of the Partnership's failure to commence construction as scheduled and to recognize Manchester's right to exercise its redemption option, the plaintiffs breached the Partnership Agreement, their fiduciary duties to Manchester, and their covenant of good faith and fair dealing.  Manchester seeks, inter alia, the following relief:  (a) specific performance of those provisions of the Partnership Agreement giving Manchester the right to exercise its redemption option and to compel the sale of the properties; (b) attachment, foreclosure and sale of the Partnership properties and the other properties for which Partnership funds have been expended; (c) imposition of a constructive trust on all the properties; and (d) damages.

After Manchester unsuccessfully moved to transfer the case to the United States District Court for the District of Vermont, Manchester filed a parallel action in Vermont state court, seeking essentially the same relief as it seeks in federal court. Manchester then moved to dismiss this federal action on the basis that the Partnership was an indispensable party whose joinder would destroy diversity.  The district court granted Manchester's motion.  Applying Federal Rule of Civil Procedure 19(a), the court held that the Partnership itself has significant interests in this litigation and should be joined if feasible.  The court then concluded under Rule 19(b) that the Partnership is indispensable, even if joinder is not feasible, in view of

prejudice to Manchester and to the Partnership that would arise if the Partnership is excluded. Because, for diversity jurisdiction purposes, a limited partnership is considered a citizen of each state in which its partners (both general and limited) are citizens, Carden v. Arkoma Associates, 494 U.S. 185 (1990), joinder of the Partnership would destroy diversity of citizenship. Thus, the district court dismissed the case for lack of subject matter jurisdiction.

We review the district court's Rule 19(a) determination that joinder is required if feasible under a plenary standard to the extent that it rests on conclusions of law and under a clear error standard as to any subsidiary findings of fact. Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993). We review for abuse of discretion the court's Rule 19(b) determination that a person is indispensable and that dismissal is required because the person's joinder is not feasible. Id. at 403.

## II. Rule 19(a)

Federal Rule of Civil Procedure 19 determines when joinder of a particular person is compulsory. A court must first determine whether the person should be joined pursuant to Rule 19(a). If Rule 19(a) is satisfied but joinder is "not feasible" -- because, inter alia, joinder would destroy diversity jurisdiction -- the court must apply Rule 19(b) to determine whether, "in equity and good conscience," the party is "indispensable." If the court determines that the party is indispensable, the action must be dismissed.

We agree with the district court that, pursuant to Rule 19(a), this Partnership should be joined if feasible. Under Rule 19(a), a person should be joined if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). Assuming that the Partnership has interests as an entity, a question to which we will turn presently, the Partnership clearly has an interest in this case: Manchester's obligation to provide capital -- the alleged breach of which is the basis of the HB entities' suit -- ran to the Partnership, see 4 Alan R. Bromberg & Larry E. Ribstein, Bromberg and Ribstein on Partnership § 15.04(g), at 15:34 (1994) (stating that the partnership itself has a claim for nonpayment of a limited partner's contribution to the partnership); and, if Manchester remains a partner it will force the sale of the Partnership's real property. Given the Partnership's interests, joinder of the Partnership is required under Rule 19(a)(2) if feasible: the Partnership might be able to bring identical

claims against Manchester, or, alternatively, the Partnership's claims might be extinguished in this action by the HB entities.

### III. Rule 19(b)
### A. Introduction

Although Rule 19(a) requires joinder if feasible, joinder is not feasible in this case because of the Supreme Court's ruling in Carden v. Arkoma Associates, 494 U.S. 185 (1990). Carden held that, for diversity jurisdiction purposes, a limited partnership is considered a citizen of each state in which its partners are citizens. Thus, although there is complete diversity without joinder of the Partnership because the suit is brought by two Delaware and Vermont citizens against a New Jersey citizen, diversity will be destroyed if the Partnership, a citizen of Vermont, New Jersey, and Pennsylvania, is joined. Because joinder is therefore not feasible, this case should be dismissed if the Partnership is deemed an indispensable party. The question, then, is whether this case can, "in equity and good conscience," proceed without the Partnership as a party, Fed. R. Civ. P. 19(b). We conclude that the district court abused its discretion in holding that the case cannot so proceed.

In contrast to Carden's jurisdictional rule, which the Supreme Court acknowledged to be "technical, precedent-bound, and unresponsive to policy considerations," Carden, 494 U.S. at 196, whether a person is indispensable depends on "pragmatic considerations," Fed. R. Civ. P. 19 Advisory Committee Notes to the 1966 Amendment; see Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 116 n.12 (1968). Rule 19(b) lists several factors to consider in deciding whether a person is indispensable:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Applying these factors, the district court dismissed the case, concluding that exclusion of the Partnership would prejudice the Partnership's interests and, because of the possibility that the Partnership itself could later sue on the same claims, would prejudice Manchester's interests; that protective provisions in the judgment could not lessen this prejudice; and that the plaintiffs have an adequate remedy if the suit is dismissed because of the identical litigation filed by Manchester in Vermont state court. The court also decided that the HB entities' suit is a derivative action, and found guidance in cases holding that a partnership is an indispensable party in derivative actions. Manchester echoes all of these reasons and offers, as an additional reason for dismissal, that its counterclaims against the Partnership cannot

be heard in federal court.  We conclude that none of the reasons offered for dismissal is meritorious.

### B. Manchester's Interests

Taking the easiest question first, we conclude that protective provisions in the judgment can effectively avoid any prejudice to Manchester that might be caused by excluding the Partnership from the litigation.  We acknowledge that Manchester would be prejudiced if this litigation will not bind the Partnership itself, thus allowing the Partnership to later bring an identical claim.  But the Partnership, like a marionette, cannot make a move unless some human being pulls the strings.  And all the people who, under the Partnership Agreement, have the power to cause the Partnership to bring suit -- probably only HB General, see Partnership Agreement § 5.2, App. 142 ("No Limited Partner in its capacity as Limited Partner shall take part in the conduct or control of the business of the Partnership or have any right or authority to act for or bind the Partnership."), but in no case people other than the present parties, HB General, HB Limited, and Manchester -- are before the court.  The court can therefore enjoin all the partners from bringing a subsequent suit on behalf of the Partnership.

Furthermore, the court can require HB General to cause the Partnership to release its claim against Manchester as a condition of judgment, thus ensuring that even if one of the current partners assigns its partnership interest to a new person, that person cannot initiate suit on behalf of the Partnership.  See Partnership Agreement § 6.1, App. 142 (Subject to certain limitations, "the General Partner is authorized, in furtherance of the business of the Partnership, to make decisions, take actions and enter into and perform contracts of any kind necessary, proper, convenient or advisable to effectuate the purposes of the Partnership.")  In short, protective provisions in the judgment can avoid all prejudice to Manchester, and thus prejudice to Manchester is not a reason to dismiss this case.

### C. The Partnership's Interests

The district court also decided, and Manchester argues, that exclusion of the Partnership would prejudice the Partnership's interests.  We disagree.  Although indispensability under Rule 19 is a question of federal law, state law determines the nature of the interests of all the individuals concerned.  See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 125 n.22 (1968); Hertz v. Record Publishing Co., 219 F.2d 397, 399-400 (3d Cir.), cert. denied, 349 U.S. 912 (1955).  The relevant state law here is that of Delaware, as the partnership is organized pursuant to Delaware law, Partnership Agreement Art. III, App. 137-38, and Delaware law is the source of any cause of action the Partnership may have for Manchester's breach of contract, seePartnership Agreement § 17.5, App. 174 ("[T]his Agreement shall be governed by and construed in accordance with the laws of Delaware . . . .").

First we must decide whether, under Delaware law, the

Partnership has interests as an entity in this case. Historically, the common law considered partnerships to be collections of individuals rather than distinct jural entities with their own interests. See 1 Bromberg & Ribstein, supra § 1.03, at 1:20; Puerto Rico v. Russell & Co., 288 U.S. 476, 480 (1933); Silliman v. DuPont, 302 A.2d 327, 331 (Del. Super. Ct. 1972), aff'd, F.I. Du Pont, Glore, Forgan & Co. v. Silliman, 310 A.2d 128 (Del. 1973). However, today there is much ambivalence about the appropriate characterization of partnerships. See 1 Bromberg & Ribstein, supra § 1.03, at 1:19 to 1:20, 1:40. Delaware, like most states, has not adopted either a pure aggregate or pure entity theory of partnerships, but seems to treat partnerships differently for different purposes. SeeSilliman, 302 A.2d 332 n.4 (noting that the evolution of the Uniform Partnership Act has been viewed as a "realistic accommodation of entity theory to aggregate practice which leaves unresolved many problems concerning the legal nature of partnerships . . . ."). Limited partnerships, with their limitations on limited partner liability and control, are clearly more entity-like than general partnerships, but even these are not treated as entities in all contexts. See 3 Bromberg & Ribstein, supra § 11.03(a), at 11:27; cf. Silliman, 302 A.2d at 327 (recognizing the lack of a coherent view of the nature of partnerships in a case involving a limited partnership).

We conclude that, under Delaware law, the Partnership has interests as an entity in this case. Delaware treats partnerships -- even general ones -- as entities for purposes of owning property, see generally 1 Bromberg & Ribstein, supra § 1.03(c)(1), at 1:23 to 1:25. For example, a partnership can acquire and convey real property in its own name, Del. Code Ann. tit. 6, § 1508(c); an individual partner has only limited rights to possession and assignment of partnership property, id. § 1525(b); an individual partner's right in partnership property is not subject to attachment or execution, except on a claim against the partnership, id.; and an individual partner cannot devise partnership property, id.. Moreover, this Partnership has several property interests that are implicated by this litigation. Most obviously, if Manchester wins this litigation, it will compel a sale of the Partnership's undeveloped real property. In addition, a partnership's causes of action are themselves partnership property, see 2 Bromberg & Ribstein, supra§ 5.03(d), at 5:21, and the Partnership may have a cause of action that will be effectively decided in this case. Manchester has allegedly breached a duty to the Partnership, and thus it appears that the Partnership itself has a cause of action against Manchester. See 4 id. § 15.04(g), at 15:34 (stating that the partnership itself has a claim for nonpayment of a limited partner's contribution to the partnership). Thus, under Delaware law, the Partnership, as an entity, has interests in this case.

That said, we do not believe the Partnership's interests would, as a practical matter, be prejudiced by excluding it from the action. Even though the Partnership has its own interests, it is an artificial entity: its interests must ultimately derive from the interests of the human beings that are its members

(albeit through the medium of other partnerships and corporations). The exact relationship between the Partnership's interests as an entity and those of the individual partners has not been addressed by the Delaware courts. But, following Rule 19's pragmatic approach, we are guided by common sense. A partnership's interests as an entity consist of an aggregation of those interests of each of the individual partners that are relevant to the purpose of the partnership. Thus, at least in certain cases, it is possible that a partnership's interests can be effectively represented in litigation by participation of its partners.

We believe that to be the case here. This partnership consists of at most three partners, all of whom are before the court. Although each of the partners may arguably bring to bear some interests (the nature of which no one has identified) that are distinct from those of the Partnership, we have no doubt that the Partnership's interests in this case are adequately represented by the partners. If the Partnership has a claim against Manchester and the right to retain its real property, these interests will be effectively advanced by the HB entities. And even if the HB entities' interests are not entirely consistent with those of the Partnership, they are not antagonistic. Furthermore, to the extent the HB entities' interests diverge from the Partnerships's interests, Manchester can protect them.

This case is thus analogous to Delta Financial Corp. v. Paul D. Comanduras & Associates, 973 F.2d 301 (4th Cir. 1991). There, the Fourth Circuit stated, in an action between the only two partners of a limited partnership:

> Even if the partnership entity may under some circumstances be a necessary or indispensable party to litigation involving the constituent partners, which we do not suggest, we are of opinion that Vanguard [the partnership] is not necessary or indispensable to the instant dispute. This action arises out of a strictly internal conflict between the partners, all of whom, after our decision today, will be before the district court. PDS has failed to establish that Vanguard itself has any interest distinct from the interests of the several partners. Thus, we are satisfied that "complete relief [may] be accorded among those already parties," and that Vanguard claims no interest different from the interest of the partners that may be impaired by the imposition of the case and that Vanguard's absence will not "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."

Id. at 303-04 (citations omitted); see also DM II, Ltd. v. Hospital Corp., 130 F.R.D. 469, 473 n.5 (N.D. Ga. 1989) (stating, in an action brought by some but not all partners, "Joinder of each non-party partner would ordinarily satisfy Rule 19, since the interests of the partnership would be adequately represented"). Although in some cases the interests of the

partners may sufficiently diverge from those of the partnership that the partnership is an indispensable party, we simply cannot conceive of any interest the Partnership has as an entity in this case that will not be advanced by the three partners.

## D. Derivative Actions

The district court and Manchester also attach much significance to whether this action is a derivative action.  In their view, the HB entities' action is derivative and they believe this provides a special reason that the Partnership must be joined.  They cite to many cases finding the Partnership to be an indispensable party in derivative actions.  See, e.g., Bankston v. Burch, 27 F.3d 164, 167-68 (5th Cir. 1994); Buckley v. Control Data Corp., 923 F.2d 96, 98 (8th Cir. 1991).

### 1. Is this Action Derivative?

As a preliminary matter, we are not at all certain that this is a derivative action.  It is true that Delaware courts have stated the general rule that whether an action is derivative or direct depends on whether the harm alleged by the plaintiff is independent of harm suffered by the corporation or partnership itself.  See Kramer v. Western Pacific Industries, Inc., 546 A.2d 348, 351-52 (Del. 1988); Litman v. Prudential-Bache Properties, Inc., 611 A.2d 12, 15 (Del. Ch. 1992); see also generally 12B Fletcher's Cyclopedia of Corporations § 5911, at 483-84.  And here the harm alleged by the HB entities -- breach of Manchester's obligation to provide capital to the Partnership -- was suffered by the partners only through its harm to the Partnership.

But, in this case brought by those in control of the Partnership, the action may still not be derivative.  The derivative action device, with its attendant demand requirement, was developed to aid investors who have no control over a company redress harms to the company in the face of management's inaction.  See Ross v. Bernhard, 396 U.S. 531, 534 (1970); 2 Bromberg & Ribstein, supra s 5.05(a), at 5:35 ("The substantive distinction [between direct] enforcement of a partnership right by fewer than all the partners [and a derivative action] is not always clear but seems to be this:  In a derivative suit, the plaintiff partner is typically acting against the wishes of those partners who have decisionmaking authority for enforcement of the partnership right . . . ."); see also Del. Code Ann. tit. 6, § 17-0001 (stating, in the subchapter entitled "Derivative Actions," "A limited partner may bring an action in the Court of Chancery in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed.") (emphasis added).

Here, the action was brought in part by the general partner, who has authority to act for the Partnership.  In Delaware, general partners have the power to sue directly on behalf of the partnership on the partnership's claims.  See Thompson Door Co. v. Haven Fund, 351 A.2d 864, 865 (Del. 1976) ("Each [general]

partner has the power to use ordinary legal process to enforce obligations owed the partnership and therefore may engage counsel to sue on behalf of the firm."); Partnership Agreement § 6.1, App. 142 (Subject to certain limitations, "the General Partner is authorized, in furtherance of the business of the Partnership, to make decisions, take actions and enter into and perform contracts of any kind necessary, proper, convenient or advisable to effectuate the purposes of the Partnership."); 4 Bromberg & Ribstein, supra § 15.02(b), at 15:13, & § 15.02(e), at 15:16 to 15:17.  The power to sue "on behalf" of a partnership does not mean that the partnership itself must be named as a party: although Delaware has a "common name" statute, allowing partnerships to sue and be sued in the partnership name, see Del. Code Ann. tit. 10, § 3904, its "use, although often convenient, is not mandatory."  Furek v. University of Delaware, 594 A.2d 506, 513 (Del. 1991); see, e.g., Verlaque v. Charles A. Zonko Builder, Inc., 1989 WL 112029 (Del. Super. Ct. Sept. 11, 1989) (action brought by plaintiff "individually and on behalf" of a partnership).  Thus, the HB entities can sue directly to enforce Manchester's obligation to the Partnership, and do not need to resort to a derivative action.

Another reason this action may not be derivative is that the HB entities may have the right to bring suit directly as individuals.  The basis for any cause of action here is Manchester's alleged breach of the Partnership Agreement.  Both HB General and HB Limited are parties to the agreement, and breach of a Partnership Agreement has been held to constitute an individual as well as a partnership claim.  See 4 Bromberg & Ribstein, supra § 15.04(h), at 15:37 & n.35.  Thus the HB entities can bring this suit through a number of different means, and the action need not be characterized as derivative.

2. The Immateriality of the Characterization of this Suit
(a) To Rule 19

For purposes of this appeal, we need not decide, however, whether, under state law, the HB entities are suing derivatively, directly on behalf of the Partnership, or directly as individuals.  As far as Rule 19 is concerned, state law is relevant only in determining the interests of those affected by the litigation.  See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 125 n.22 (1968); Hertz v. Record Publishing Co., 219 F.2d 397, 399–400 (3d Cir.), cert. denied, 349 U.S. 912 (1955).  Once these interests are determined, federal law governs the balancing of interests in determining indispensability.  See Patterson, 390 U.S. at 125 n.22; Hertz, 219 F.2d at 400.  Thus, even if the relevant state law requires joinder of a partnership in derivative actions and actions on behalf of the partnership in cases brought in the state's courts, that will not affect the balancing of interests under Rule 19. See Hertz, 219 F.2d at 399–400 ("Even if, in a suit in a Pennsylvania court, such officers are indispensable as a procedural requirement, they are not necessarily indispensable in a federal court.").

Moreover, the characterization of this action as derivative

or on behalf of the Partnership has no impact on our earlier analysis of the interests of the Partnership and the partners. The only significant consequence of such a characterization for determining the relevant interests is that the Partnership itself has a cause of action. But we considered the Partnership's potential cause of action and its implications in that earlier analysis.

We recognize that the Supreme Court has stated, in the corporations context, that the corporation is an indispensable party in stockholder derivative actions. See Ross v. Bernhard, 396 U.S. 531, 538 (1970); Koster v. Lumbermens Mut. Casualty Co., 330 U.S. 518, 522 n.2 (1947); Davenport v. Dows, 85 U.S. (18 Wall.) 626, 627 (1873); see also Guerrino v. Ohio Casualty Insurance Co., 423 F.2d 419, 422 (3d Cir. 1970). If meant as a general rule, this statement is in tension with the Court's admonitions that "Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation," and that "[t]here is no prescribed formula for determining in every case whether a person . . . is an indispensable party." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118 & n.14 (1968) (citations and internal quotation marks omitted). But even if it is the rule that the corporation is indispensable in a shareholder's derivative action, the partnership context in general, and this case in particular, are distinguishable.

Unlike partnerships, the corporation's status as a distinct jural entity is deeply rooted in our law; the bright lines that come with this status are one of the corporate form's major attractions. Thus, a clear rule for joinder may be uniquely appropriate for the corporation context. And, generally, shares in corporations are much more quickly and easily transferred than partnership interests, making a determination of whether the aggregation of stockholder's interests sufficiently represents the corporation extremely difficult. Partnerships lack consistent entity-treatment, and, at least for small partnerships, the determination of whether the partners' interests align with those of the partnership is not difficult. In this case, the partnership consists of essentially two (though formally three) members, and we are easily able to determine that the individual partners effectively represent the Partnership.

### (b) To Rule 17

Of course, the state-law characterization of an action as derivative or on behalf of another might affect joinder via Rule 17. Rule 17(a) states that "[e]very action shall be prosecuted in the name of the real party in interest," and that an action shall be dismissed if the real party in interest is not substituted or joined. The Supreme Court, in stating that the corporation is an indispensable party in a stockholder's derivative action, stated that the corporation is the real party in interest. Ross v. Bernhard, 396 U.S. 531, 538 (1970). We conclude, however, that Rule 17 does not require the partnership's joinder even if the HB entities' claims are

derivative or otherwise on behalf of the Partnership.

The real party in interest rule ensures that under the governing substantive law, the plaintiffs are entitled to enforce the claim at issue. See Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc., 630 F.2d 250, 256-57 (5th Cir. 1980); Virginia Elec. & Power Co. v. Westinghouse Elec. Corp., 485 F.2d 78, 83 (4th Cir. 1973), cert. denied, 415 U.S. 935, and cert. denied sub nom. Stone & Webster Engineering Corp. v. Virginia Elec. & Power Co., 415 U.S. 935 (1974); 6A Charles Alan Wright et al., Federal Practice and Procedure § 1543, at 334 (2d ed. 1990). There may be multiple real parties in interest for a given claim, and if the plaintiffs are real parties in interest, Rule 17(a) does not require the addition of other parties also fitting that description. See Wright et al. supra, at 340; see also, e.g., Fed. R. Civ. P. 17(a) ("An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought . . . ."). Thus, insofar as the HB entities are authorized to bring suit under Delaware law -- even derivatively or otherwise on behalf of the Partnership -- they are also real parties in interest.

This conclusion is informed by the fact that the original purpose of the real party in interest rule was permissive -- to allow an assignee to sue in his or her own name. Fed. R. Civ. P. 17 Advisory Committee Notes to the 1966 Amendment. The "modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to ensure generally that the judgment will have its proper effect as res judicata." Id. As noted above, any doubt as to the preclusive effect of this litigation on the Partnership can be resolved by protective provisions in the judgment.

In sum, this action may well not be derivative but, at all events, the characterization of the suit is immaterial to either Rule 19 or Rule 17.

### E. Manchester's Counterclaims

Manchester offers one reason for dismissal not relied on by the district court: that the Partnership is an indispensable party to Manchester's counterclaims but that joinder would destroy subject matter jurisdiction over the counterclaims because Manchester and the Partnership share citizenship in New Jersey. If Manchester cannot pursue its counterclaims without participation of the Partnership and the Partnership must be excluded from the litigation, Manchester would have a strong argument for dismissal. The third factor of Rule 19(b) -- "whether a judgment rendered in the person's absence will be adequate" -- considers the extent to which exclusion of an interested person would leave significant matters unadjudicated. See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968) ("We read the Rule's third criterion . . . to refer to this public stake in settling disputes by wholes,

whenever possible . . . ."). However, as we shall presently explain, the Partnership can be joined as to Manchester's counterclaims, without destroying subject matter jurisdiction.

Complete diversity is required only when federal court jurisdiction is exercised under the federal diversity jurisdiction statute, 28 U.S.C. § 1332. See State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 530-31 (1967). Under the Constitution, diversity jurisdiction requires only minimal diversity among the parties, i.e., at least one defendant and one plaintiff need be citizens of different states. Id. Here the district court has statutory authority to exercise jurisdiction over Manchester's counterclaims under the supplemental jurisdiction statute, 28 U.S.C. § 1367.

28 U.S.C. § 1367 provides that, in general, if the district court has jurisdiction over one claim, it can maintain jurisdiction over claims that lack an independent basis of jurisdiction if those claims "are so related to claims" within the court's jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." The rule applies even to claims asserted by or against additional parties. Id. Although the statute places certain limits on a court's ability to exercise supplemental jurisdiction over claims by or against non-diverse additional parties when the basis for the original claim is diversity jurisdiction, those limits only apply when the additional claims are brought by plaintiffs. See Development Finance Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156, 160-61 (3d Cir. 1995). Indeed, we have specifically held that in a diversity action, the district court may exercise supplemental jurisdiction over a defendant's counterclaim against non-diverse parties joined as third-party defendants to the counterclaims. See In re Texas Eastern Transmission Corp. PCB Contamination Insurance Coverage Litig., 15 F.3d 1230, 1236-38 (3d Cir.), cert. denied sub nom. Texas Eastern Corp. v. Fidelity & Cas. Ins. Co., 115 S. Ct. 291 (1994).

Thus, the only remaining question is whether Manchester's counterclaims are "so closely related to [the HB entities' claims] that they form part of the same case or controversy under Article III of the United States Constitution." Claims are part of the same case or controversy if they share significant factual elements. See Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991) ("Claims are part of the same constitutional case if they "derive from a common nucleus of operative fact . . . .") (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)); White v. County of Newberry, 985 F.2d 168, 172 (4th Cir. 1993) ("The claims need only revolve around a central fact pattern.").

Manchester's counterclaims rely on essentially the same facts as does its defense to the HB Entities' claims. Manchester's primary defense is that HB General's final capital call was ineffective because the Partnership could not commence construction as scheduled and thus that Manchester appropriately exercised its redemption option before the capital call was due. Manchester's counterclaims are that the Partnership, along with the HB entities and Vanderbilt Development Corporation (a Vermont

corporation with its principal place of business in Vermont), breached the Partnership Agreement and the covenant of good faith and fair dealing due to its failure to recognize Manchester's right to redemption and its attempted conversion of Manchester's partnership interest into that of a subordinated creditor. Both the defense and the counterclaims require proof that construction was not commenced as scheduled; that, under the Partnership Agreement, Manchester had the right to exercise the redemption option; and that Manchester did exercise the redemption option. Manchester's counterclaims are thus within the supplemental jurisdiction of the district court.

In sum, joinder of the Partnership on the counterclaims will not destroy subject matter jurisdiction over the counterclaims even though Manchester and the Partnership share citizenship in New Jersey.

## IV. Conclusion

For the reasons we have explained, the district court's decision to dismiss this action for failure to join the Partnership was an abuse of discretion. Because all the partners of this small limited partnership are before the court, the exclusion of the Partnership entity causes no prejudice to defendant Manchester or to the Partnership. The presence of all the partners ensures that the district court can fashion protective provisions in the judgment to protect Manchester from a subsequent suit and that the interests of the Partnership will be effectively represented. Furthermore, plaintiffs HB entities can proceed without the Partnership whether or not the action is derivative under state law: that characterization is only relevant to determine the relative interests involved, which, as we have shown, will not be prejudiced by exclusion of the Partnership. Finally, Defendant Manchester can bring its counterclaims against the Partnership in this action under the district court's supplemental jurisdiction, and thus there is no risk of piecemeal litigation. The judgment of the district court will be reversed, and the case remanded for further proceedings.