**PETER BAY HOMEOWNERS ASSOCIATION, INC.,**

v.

**Andrew R. STILLMAN; Joy H. Stillman; John G. Catts; Sheila J. Roebuck**

**Antonio Godinez; Bonnie Godinez; Michael Burgamy; Ethlyn Hall, Intervening Plaintiffs in District Court**

v.

**James Henry; Carol Henry; L.D. Kirk; Scott F. Meese; Donna G. Meese; Arie Liebeskind; Doreen Liebeskind; Jim R. Hayes; Zaquin S. Hayes; Jeffrey Price; Steven Paul; Jann Paul; St. John Land Investment L.P.; Andrews St. John Trust, Intervening Defendants in District Court**

**Peter Bay Owners Association, Inc., Appellant in 01–3726**

**James Henry, Carol Henry and \*Robert D. Blakeney II, Appellants in 01–3727**

**\* (Pursuant to Rule 12(a), F.R.A.P.)**

**Andrews St. John Trust, Appellant in 01–3728.**

Nos. 01–3726, 01–3727, 01–3728.

United States Court of Appeals, Third Circuit.

Argued: May 14, 2002.

Filed: June 27, 2002.

Matthew J. Duensing (argued), Margaret A. Duensing, Stryker, Duensing, Casner & Dollison, Charlotte Amalie, St. Thomas, VI, for James Henry, Carol Henry and Robert Blakeney.

Susan Moorehead (argued), Grunert Stout & Bruch, Charlotte Amalie, St. Thomas, VI, for Andrews St. John Trust.

James M. Derr, Charlotte Amalie, St. Thomas, VI, for Peter Bay Owners Association.

Samuel H. Hall, Jr. (argued), Birch, de Jongh, Hindels & Hall, Charlotte Amalie, St. Thomas, VI, for Ethlyn Hall.

John H. Benham (argued), Watts & Benham, P.C., Charlotte Amalie, St. Thomas, VI, for Andrew Stillman and Joy Stillman.

Henry C. Smock (argued), Smock Law Offices, P.C., Charlotte Amalie, St. Thomas, VI, for Antonio Godinez and Bonnie Godinez.

Before: AMBRO, FUENTES and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

In the normal course of a federal judge's labours, rarely do issues of real estate title, metes and bounds, or easements come before the District Court. This appeal, stemming from former District Court Judge Warren Young's opinion dated August 21, 1975, is the exception. This appeal concerns the scope of an easement across certain beachfront properties in an area in St. John, Virgin Islands, known as Peter Bay. The question presented is whether the easement across three parcels of land which make up a portion of the beachfront property in Peter Bay—Parcels 1, 2A, and 10A (the "relevant parcels")—extends from the low water shoreline to 50′ inland or to the vegetation berm (which is less than 50′ inland in most places). According to the parties, the size of this beachfront easement significantly affects the value and utility of individual parcels within the current Peter Bay subdivision and the value of the subdivision as a whole.

### I.

In 1997, the Peter Bay Owners Association, an organization created for the collective benefit of the property owners in Pe-

ter Bay (the "Association"), commenced suit against four individual Peter Bay property owners in the District Court of the Virgin Islands seeking dues and declaratory judgment concerning, *inter alia*, certain obligations stemming from a prior 1975 district court opinion. A number of other Peter Bay property owners intervened in the action. All issues were eventually settled except for the easement issue. On August 22, 2001, the District Court vacated a portion of its prior July 8, 1999 decision and ruled that the easement with respect to the relevant parcels (Parcels 1, 2A, and 10A) ran only to the vegetation berm.

The Association and certain property owners appealed the August 2001 opinion and order. Other than the Association, the appellants are: (1) James and Carol Henry, owners of Parcel 2B (the "Henrys"); (2) Robert Blakeney II, owner of Parcel 3, ("Blakeney"); and (3) Andrews St. Johns Trust, owner of Parcel 13A ("Andrews Trust").

The appellees are: (1) Ethlyn Hall, owner of Parcel 16 ("Hall"); (2) Andrew and Joy Stillman, owners of Parcel 10A (the "Stillmans"); (3) Antonio and Bonnie Godinez, owners of Parcel 2A, (the "Godinezes"); and (4) Michael Burgamy, owner of Parcel 1 ("Burgamy"). We recognize that some of the parties and intervenors were not the subject of the District Court's August 22, 2001 order, and hence we do not review or rule upon the arguments which they have presented in their briefs and on oral argument. Indeed, in some instances, we are uncertain as to the relief they seek in the context of the easement size.

For the reasons that follow, we conclude that the restrictions set forth in the "Declaration of Protective Covenants for the Partnership Property" (the "Protective Covenants") establish a 50' easement across Parcels 1 (owned by Burgamy) and 2A (owned by the Godinezes). We also conclude, however, that Parcel 10A (owned by the Stillmans) is charged with only a berm line easement because it is not subject to the Protective Covenants inasmuch as the Stillmans received their property directly from Harthman heirs.

Ethlyn Hall, the owner of Parcel 16, was not the subject of the District Court's August 2001 order and is an original Harthman heir—hence, her deed, which provides for an easement to the vegetation berm, requires no relief from us. Similarly, the Andrews Trust property (Parcel 13A), which was not the subject of the District Court's August 2001 order, is not reviewed by us, but is subject to the 50' easement decreed by the District Court in its earlier July 1999 opinion since no motion for reconsideration was sought. In any event, Parcel 13A is subject to the Protective Covenants.

The Henrys' Parcel 2B is also subject to the 50' easement provided in the Protective Covenants (and in some places, to a 55' easement), but, as noted, their parcel was not the subject of the District Court's August 2001 order, and hence is not reviewed by us.

Lastly, Blakeney, whose Parcel 3 had been received from Andrews Trust subject to the Protective Covenants, was not the subject of the District Court's August 2001 order, but would not be affected either by this opinion or the Protective Covenants to the extent that much, if not all, of Parcel 3 lacks beach frontage. We record these various prescriptions, however, only to clear the record and to dispel any confusion that may have arisen from the pleadings, the various proceedings, or the oral argument.

For the reasons that follow, we will affirm in part and reverse in part the District Court's August 2001 judgment.

## II.

### A.

The history of this litigation began three decades ago when Lillian Harthman Cheng brought suit in 1970 to partition certain land in Peter Bay that had been inherited by six Harthman heirs, of which Cheng was one. The action was brought before the Honorable Warren Young, U.S. District Court Judge of the Virgin Islands, who issued his opinion and order in 1975. *See Harthman v. Harthman,* 12 V.I. 142 (D.V.I.1975).

The land to be partitioned totaled 50.82 acres and was legally described as "Peter Farm of Estate Peter Bay, 2 aa Maho Bay Quarter, St. John, U.S. Virgin Islands," consisting of 26.07 acres south and 23.7 acres north of a public road, plus an area of 1.05 acres for the road itself. *See Harthman,* 12 V.I. at 147. It is located on the north coast of St. John between Trunk Bay and Cinnamon Bay, approximately three miles from Cruz Bay Town.

The *Harthman* Court appointed a number of commissioners to recommend the most equitable way to apportion the land among the six heirs. Dividing the land into 17 distinct parcels, the Commissioners assigned number values to certain features of each particular parcel, and concluded with an overall weighted score to determine the worth of each land grouping. In particular, the Commissioners gave higher weight to the beachfront properties, since their proximity to the shore provided additional value. Together with the personal preferences expressed by each heir, Judge Young distributed the parcels based largely upon the Commissioners' weighted value system and recommendations. The actual distribution among the heirs is not relevant to this appeal, except that it should be noted that among the parcels received by Ethlyn Hall—one of the six original Harthman heirs—was Parcel 16, a beachfront property.[1]

In order to preserve access to the beach from some of the non-beachfront properties, the Court ordered that an easement be established across each of the beachfront properties for the mutual use and enjoyment of all property owners of the beach. Accordingly, the court ordered that

> [t]here should be shown a beach easement from the water's edge to the berm line—approximately 50 ′ inland—on Parcels [1, 2A, 2B, 10A, 13A, 16]. The line on Parcel [3] should be closer to the rocky shore.

*Harthman,* 12 V.I. at 157. The court also stated that

> [a]ll owners of parcels and all future owners of plots which may or shall be subdivided from the parcels located in Estate Peter Farm, of Peter Bay, St. John, shall have a perpetual easement of the use and enjoyment of the beach area existing approximately 50′ inland from the low water mark on all waterfront parcels (except partially on [Parcel 3] ). As a condition to the continued use and enjoyment of said beach area, the said

1. The labeling system used by the Commissioners and Judge Young—which grouped the seventeen parcels into six groups (# 1–6) and then assigned a letter (A, B, or C) depending upon the terrain of the individual parcel—was replaced in 1977 by a new numbering system which continues to be in effect today. The current system simply assigns each parcel a number between 1 through 17. In subse-quent years, some of the parcels using the current system were further divided, resulting in A and B subsections, such as Parcels 2A (owned by the Godinezes), 2B (owned by the Henrys), 10A (owned by the Stillmans), and 13A (owned by Andrews Trust). To avoid confusion, we will refer only to the current numbering system.

owners, in accepting their title and this grant of easement, covenant that they will share in the cleaning and maintenance of such beach area in accordance with the provisions contained in the following paragraph relating to the use and enjoyment of the subdivision roads.

*Id.* at 158.

Judge Young ordered Virgin Islands Engineering and Surveying to complete a survey and map of Peter Bay consistent with his instructions. Joseph Brennan, the owner of Virgin Islands Engineering and Surveying, surveyed and mapped the area for the Harthman plan. He prepared PWD File No. D9–1330–T77 for the north or beachfront section of Peter Bay and PWD File No. D9–1331–T77 for the south or non-beachfront section of Peter Bay (together, the "1977 maps").[2] These maps display a straight 50' easement line across the beachfront properties.

## B.

Since the *Harthman* decision, various parcels of Peter Bay have been sold and transferred to different people and entities. The parcel owners relevant to this action can be divided into two groups: one group consists of Ethlyn Hall, who is an original Harthman heir and has continued to own Parcel 16 since the 1975 *Harthman* decision. The second group consists of the remaining owners of the relevant parcels, who received their properties directly or indirectly from conveyances made by various Harthman heirs after the 1975 decision. This second group can be further subdivided into the Stillmans, who acquired Parcel 10A directly from Harthman heirs, and the Godinezes, Burgamy, the

Henrys, Blakeney and Andrews Trust, who received their properties directly or indirectly from St. John Land Investment L.P. (the "Partnership").

The Partnership purchased Parcels 1–9 from various Harthman heirs, pursuant to a Warranty Deed dated December 9, 1986, which referenced both the 1977 maps and the *Harthman* decision. In 1988, the Partnership purchased additional property from the heirs, including Parcel 13A. Shortly thereafter, the Partnership further subdivided certain of the parcels it owned, put in roads and made other improvements.[3] It established an overall plan for its subdivisions and filed a "Declaration of Protective Covenants for the Partnership Property" (the Protective Covenants) with the Recorder of Deeds, setting forth certain additional obligations and burdens on the Partnership's property, and establishing a 50' easement across the beachfront properties owned by the Partnership. The Protective Covenants also provided for, created and established the Association.

After purchasing these properties from Harthman heirs, the Partnership sold various parcels to third parties. On December 14, 1988, the Partnership sold Parcel 2A to Danzler Lumber & Export Co. pursuant to a Warranty Deed which explicitly incorporated the Protective Covenants and the 1988 map.

On May 13, 1993, Danzler Lumber & Export Co. conveyed Parcel 2A to its president, Antonio Godinez, and his wife, Bonnie Godinez, pursuant to a Warranty Deed. While the 1993 deed does not expressly refer to the Protective Covenants, it does incorporate the 1988 deed between the

---

2. At the request of the Court, counsel furnished each member of the panel with the relevant maps prior to oral argument.

3. The new subdivisions are reflected on PWD D9–4392–T88, dated April 22, 1988 (the "1988 map"). This map also displays a 50' easement line across the beachfront properties.

Partnership and Danzler Lumber, as well as the 1988 map.

Although the record is not complete as to the chain of title of Parcel 1 from the Partnership to its current owner, Michael Burgamy, we note that Burgamy purchased Parcel 1 from Paul and Genevieve Due (the "Dues"). In this appeal, Burgamy does not dispute that his property is also subject to the Protective Covenants.

In July 1992, the Partnership sold Parcel 2B to Bernard Kramer, who sold it to the Henrys pursuant to a Warranty Deed dated April 30, 1993.

Furthermore, on July 2, 1992, the Partnership sold Parcel 13 (including 13A) to Andrews Trust pursuant to a Warranty Deed. The Partnership also sold Parcel 3 to Andrews Trust, which, in turn, sold Parcel 3 to Blakeney on December 16, 1999.

The Henrys, Blakeney and Andrews Trust (all of whom are appellants in this appeal) concede that their respective parcels are subject to the Protective Covenants, which provide a "uniform standard of rights, conditions, covenants, reservations and restrictions for all the parcels located in said subdivision which shall run with the land." *See* Recitals, Protective Covenants.

## C.

In 1997, the Association brought suit in the District Court against the Stillmans, John Catts and Sheila Roebuck seeking dues and a declaratory judgment regarding the applicability of certain deed restrictions and other obligations stemming from the *Harthman* decision. The Godinezes intervened and, together with the Stillmans, they sought a declaration concerning the scope of the easement across their properties. Eventually, Hall and the Dues intervened, and they—along with the Stillmans and Godinezes—filed summary judgment motions seeking a declaratory judgment that their properties were subject to a berm line easement. All other issues in this action were adjudicated or otherwise settled.

On March 27, 1998, the District Court issued an order stating that "[a]ll interested persons wishing to intervene in the instant litigation and to be heard on the beach easement issue must file their petitions for intervention no later than May 1, 1998 or be bound by the outcome of this litigation." A number of other property owners, including the Henrys and Andrews Trust, joined a motion to intervene which was granted on May 7, 1998.

The Association filed a cross-motion for summary judgment seeking an across-the-board 50′ beachfront easement with respect to Peter Bay beachfront properties. The Henrys and Andrews Trust, as well as other interveners, further cross-moved for summary judgment, arguing that any claim that Peter Bay properties were subject to a berm-line easement was barred by the statute of limitations.

On October 26, 1998, the District Court denied the cross-motion raising the statute of limitations issue and set a bench trial date to decide that particular issue. The District Court expressly reserved judgment on the remaining motions. On July 8, 1999, the District Court issued findings of fact on the statute of limitations issue, finding that the berm line arguments were not time barred.

Also on July 8, 1999, the District Court issued a separate opinion with regard to the remaining summary judgment motions (the "July 1999 Opinion"). The District Court ruled that the *Harthman* decision established an easement that extended only to the vegetation berm line. Because Hall was an original party to that decision, the court ruled that her property, Parcel

16, was subject to the same berm line easement. As to the other property owners, however—those who received their parcels later and were not parties to the *Harthman* decision—the court ruled that their parcels were subject to a 50' easement. In so ruling, the court noted that each of their respective deeds expressly referred to maps which referenced a 50' easement line. Accordingly, the District Court

> ORDERED that parcels 1, 2A, 10A and 13A of [Peter Bay] are subject to an easement extending a flat fifty feet inland from the 1975 low water mark, as depicted on [the 1977 maps, the 1988 map], PWD D9–5369–T92 and OLG D9–5259–T92; and
>
> ... FURTHER ORDERED that parcel 16 of [Peter Bay] is subject to an easement extending from the 1975 low water mark to the berm line, as articulated in the Partitioning Decree issued by this Court on August 21, 1975 in the case of *Harthman v. Harthman,* 12 V.I. 142 (D.V.I.1975).

*See Peter Bay Owners Assoc. v. Stillman,* 58 F.Supp.2d 640, 645 (D.V.I. 1999).

The Stillmans, the Godinezes and the Dues filed a motion for reconsideration. On July 12, 2000, the District Court held that it had erred when it failed to apply the Restatement (Third) of Servitudes in its July 1999 Opinion, citing to 1 V.I.C. § 4 (which directs the court to apply the Restatement in the absence of local laws to the contrary), granted reconsideration, and ordered supplemental briefing. In response to a challenge to its subject matter jurisdiction by the Stillmans, the District Court ruled on July 17, 2000 that it had jurisdiction to decide the issues relating to the beachfront easement.

On August 22, 2001, the District Court vacated portions of its prior July 1999 decision and declared that the beach ease-ment also extended to the vegetation berm for the Stillmans, the Godinezes and the Dues (the "August 2001 Opinion"). Applying § 4.1 of the Restatement (Third) of Property (Servitudes), the District Court focused upon the intent of the transferring parties rather than the express boundaries set forth in the deed to establish the scope of the easement. The District Court held that all the evidence showed that the intent of the respective parties was to convey the relevant properties consistently with the *Harthman* decision and that all references to a 50' easement began from a single error—namely, the misinterpretation of the *Harthman* decision as establishing a 50' easement rather than a berm line easement. Accordingly, the court

> ORDERED that the Court's Opinion and Order of July 15, 1999, are VACATED, insofar as they declare that parcels 1, 2A and 10A of [Peter Bay] are subject to an easement extending fifty feet inland from the 1975 low-water mark; and
>
> ... FURTHER ORDERED that parcels 1, 2A and 10A of [Peter Bay] are subject to an easement extending from the 1975 low-water mark to the vegetation berm line, as articulated in the Partitioning Decrees issued on August 21, 1975, in *Harthman v. Harthman,* 12 V.I. 142 (D.V.I.1975).

*Peter Bay Owners Assoc. v. Stillman,* 163 F.Supp.2d 537, 539–540 (D.V.I. 2001).

There, the District Court made clear that it was ruling only as to the parcels owned by the Dues, the Godinezes and the Stillmans, remarking that its original decision concerning Hall's Parcel (16) remained undisturbed. Moreover, as to the parcel owned by Andrews Trust (Parcel 13A), the District Court explained that

> [t]he Court's determination that parcel 13A is burdened by a flat fifty-foot easement also remains intact, given that the parcel's owner, the Andrews St. John

Trust, has not moved for reconsideration and that the deed does not appear in the materials presented for the court's review.

*Id.* at 537 n. 1.

Notably, the District Court did not address the Protective Covenants, which prescribe a 50' easement for the property owners who took under them, i.e., the Godinezes (Parcel 2A), the Dues (Parcel 1), the Andrews Trust (Parcel 13A), the Henrys (Parcel 2B) and Blakeney (Parcel 3). On August 23, 2001, the District Court substituted Burgamy as the Dues' successor-in-interest as to Parcel 1.

Timely notices of appeal were filed by the Association, the Henrys, Blakeney[4] and Andrews Trust challenging only the August 22, 2001 decision. On October 26, 2001, the Henrys and Blakeney moved the District Court to reconsider its August 22, 2001 opinion. That motion was denied by the District Court on February 6, 2002 as being untimely.

In this appeal, the Association, the Henrys (owners of Parcel 2B), Blakeney (owner of Parcel 3) and Andrews Trust (owner of Parcel 13A) seek to reverse the District Court's August 22, 2001 decision as to the scope of the easement across Parcels 1 (owned by Burgamy), 2A (owned by the Godinezes), and 10A (owned by the Stillmans). Because only the August 2001 order is challenged, the easement across the parcels owned by Andrews Trust (Parcel 13A) and Hall (Parcel 16), which was ruled upon in the District Court's July 1999

Opinion—and, for that matter, the easement across parcels owned by the Henrys (Parcel 2B) and Blakeney (Parcel 3), which was never in dispute before the District Court below—are not at issue in this appeal.[5]

### III.

■■■ This Court reviews the District Court's August 2001 grant of summary judgment *de novo, Kelly v. Drexel University,* 94 F.3d 102, 104 (3d Cir.1996), and applies the same test as the District Court. We must determine, therefore, whether the record, when viewed in the light most favorable to the non-movant, shows that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All legal determinations made by the District Court, including jurisdictional rulings, are also reviewed *de novo. See Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of America, Inc.,* 222 F.3d 123, 128–29 (3d Cir.2000); *In re Phar–Mor, Inc. Securities Litigation,* 172 F.3d 270, 273 (3d Cir.1999).

### IV.

■■ As a threshold matter, the Henrys, Blakeney and Andrews Trust contend that the District Court lacked subject matter jurisdiction to decide any issues beyond the mere interpretation of the 1975 *Harthman* decision.[6] They contend that the

---

**4.** Since Blakeney had purchased Parcel 3 from Andrews Trust on December 16, 1999, he moved the District Court to become the real party in interest with regard to that parcel. Blakeney's motion was granted on February 11, 2002.

**5.** Accordingly, we do not address the arguments made by Andrews Trust in this appeal

concerning the District Court's July 1999 ruling as to Parcel 13A.

**6.** The Stillmans also argued before the District Court that it lacked jurisdiction. Because the Association argued below that the District Court *properly exercised* subject matter jurisdiction, it did not join its co-appellants in arguing the court's lack of jurisdiction.

District Court's August 2001 judgment, which ruled as to parties not directly affected by the 1975 decision, must be vacated as a result. We disagree.

In 1975, the district court exercised subject matter jurisdiction over the partition action under Section 22 of the Revised Organic Act of 1954, 48 U.S.C. §§ 1541–1645 (West 1987 and Supp.2001), which conferred general jurisdiction (with limited exceptions) upon the District Court of the Virgin Islands over all local matters. *See Luis v. Dennis,* 751 F.2d 604, 607 n. 3 (3d Cir.1984). That statute was amended in 1984, providing the Virgin Islands legislature with the ability to vest jurisdiction over local actions exclusively in the local courts. *See Callwood v. Enos,* 230 F.3d 627, 631 (3d Cir.2000). The Virgin Islands legislature exercised this authority in 1990, effectively "divest[ing] the District Court of the Virgin Islands of jurisdiction over all local civil actions," *Club Comanche, Inc. v. Government of the Virgin Islands,* 278 F.3d 250, 256 (3d Cir.2002) (internal quotations omitted), but reserving its "federal question and diversity jurisdiction in civil actions." *Id.; see also* 4 V.I.C. § 76(a).

Consequently, this action—a local property dispute—lacks the traditional indices of subject matter jurisdiction, since § 22, as noted, was amended and thus was no longer available, and neither a federal question nor complete diversity exists. There is no question, however, that the District Court had jurisdiction to interpret the scope of the easement ordered by Judge Young in his 1975 decision. It had that jurisdiction pursuant to its inherent power to interpret, and thereby effect, the District Court's own decrees. *See Kokkonen v. Guardian Life Ins. Co.,* 511 U.S.

375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (noting that federal courts have properly exercised ancillary jurisdiction "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.").

One of the important aspects of Judge Young's decision was the implementation of the beachfront easement to ensure that each of the property owners had reasonable and reciprocal access to the beach.[7] Clearly, the District Court had jurisdiction to interpret the meaning and scope of the various obligations imposed by the previous 1975 District Court upon the Peter Bay properties.

■ The less obvious question is whether the instant District Court had jurisdiction to decide the scope of the easement concerning property owners who were not actual parties to the *Harthman* decision. Under 28 U.S.C. § 1367,

> [i]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Known as "supplemental jurisdiction," § 1367 has permitted federal courts to exercise subject matter jurisdiction over matters they would normally be precluded from entertaining so long as the supplemental matters are deemed to involve or relate to the same controversy as to matters properly before the federal court. *HB General Corp. v. Manchester Part-*

---

**7.** An additional obligation no longer at issue here concerned the 1997 action brought by the Association which sought primarily to enforce certain monetary obligations directly imposed by the original *Harthman* decision for the upkeep and care of the roadways in Peter Bay.

*ners,* 95 F.3d 1185, 1191 (3d Cir.1996) ("28 U.S.C. § 1367 provides that, in general, if the district court has jurisdiction over one claim, it can maintain jurisdiction over claims that lack an independent basis of jurisdiction if those claims are so related to claims within the court's jurisdiction that they form part of the same case or controversy under Article III.") (internal quotations omitted). We have noted that supplemental jurisdiction "applies even to claims asserted by or against additional parties." *Id.* at 1197.

■ We are satisfied that there is sufficient overlap between the interpretation of the 1975 *Harthman* decision and the scope of the beachfront easement across non-Harthman owned properties for supplemental jurisdiction to exist. First, the properties at issue are identical to those that were addressed by Judge Young in 1975. Although the owners have changed, the parcels of land have not. The 1975 *Harthman* decision significantly altered the boundaries and obligations associated with each parcel of land at issue in this action. In order to determine what restrictions encumber these properties today, it is logically necessary to determine what restrictions encumbered those same properties originally. If, for example, Judge Young did indeed order a 50′ easement across the Peter Bay properties, then the transferors would have been *without power* to convey their property up to the vegetation berm, since a grantor cannot sell a property interest greater than what he owns. Accordingly, in such a circumstance, a berm line easement would not have been possible notwithstanding the intent of the transferring parties.

Second, most, if not all, the relevant deeds in this matter directly reference the *Harthman* decision in their terms. In this way, a proper interpretation of the *Harthman* opinion provides an important start-ing point for determining the boundaries of the easement.

As key threshold factual questions concerning the easement necessarily revolve around the meaning of the original *Harthman* decision, the issues are sufficiently intertwined to be considered part of the "same case or controversy." *See HB General Corp.,* 95 F.3d at 1198 ("Claims are part of the same case or controversy if they share significant factual elements"); *White v. County of Newberry,* 985 F.2d 168, 172 (4th Cir.1993) ("The claims need only revolve around a central fact pattern."); *see also Kokkonen,* 511 U.S. at 379, 114 S.Ct. 1673 ("Generally speaking, we have asserted ancillary jurisdiction ... to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent"); *United States v. Dunegan,* 251 F.3d 477, 478–79 (3d Cir.2001) ("A federal court invokes ancillary jurisdiction as an incident to a matter where it has acquired jurisdiction of a case in its entirety and, as an incident to the disposition of the primary matter properly before it. *It may resolve other related matters which it could not consider were they independently presented.*") (citing 13 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Fed. Practices & Procedures: Jurisdiction 2d § 3523) (emphasis added).

■ Once it is determined that a court *could have* exercised supplemental jurisdiction over these matters, its decision to exercise supplemental jurisdiction is subject to the court's discretion. *See New Jersey Turnpike Authority v. PPG Ind., Inc.,* 197 F.3d 96, 113 (3d Cir.1999); 28 U.S.C. § 1367(c). The record discloses nothing to indicate that the District Court abused its discretion in exercising its supplemental jurisdiction here.

Accordingly, we conclude that the District Court here had subject matter juris-

diction over the issues it decided in the August 2001 Opinion.

## V.

The appellants contend that the District Court erroneously decided in its August 2001 Opinion that the parcels owned by the Stillmans, the Godinezes and Burgamy were subject only to a berm line easement. To answer this question, we must first examine the scope of the 1975 *Harthman* opinion before addressing the post–1975 transfers of property.

## A.

■ As previously discussed, the 1975 *Harthman* opinion established the original boundaries of the properties at issue in this appeal, including the initial size of the beachfront easements. Judge Young's discussion in that opinion can be divided into two parts: the Commissioners' recommendations concerning the beachfront easement; and the actual scope of the easement as *ordered* by Judge Young.

As to the first part (the Commissioners' recommendations), the *Harthman* court noted that

[i]n order to preserve access to the beach and beach properties, the *commissioners recommended* that perpetual easements be established for . . . a fifty foot (50') wide beach easement adjacent to and along the water's edge.

*Harthman,* 12 V.I. at 148 (emphasis added). Judge Young referred to the Commissioners' recommendation once again later in his opinion, stating

[t]hey [the commissioners] have also indicated a pedestrial right-of-way path from the public road to the beach . . . and, lastly, they have indicated a strip of beach from the water's edge to a point 50' inland (approximately to the berme

[sic] ) for a mutual easement of the use and enjoyment of the beach.

*Id.* at 154. In light of these recommendations, the court asked the following rhetorical question:

Should there be restrictive covenants for a sound land development of the entire Peter Farm, now owned by several individual owners?

*Id.*

The court then went on to the second part of its discussion (its actual *order* of the easement). With regard to the beachfront easement, Judge Young answered his own rhetorical question in the following way:

Although the Commissioners have divided the beach area into six (6) parcels, that area, *in accordance with the policies spelled out in the Virgin Islands Open Shorelines Act,* 12 V.I.C. § 401 *et seq.,* should remain open to all the owners equally. No obstruction or barrier shall be constructed across or within the "shorelines" of said property, *as that term is defined in Section 402(b) of the Act,* and each plot shall include a mutual easement of the entire area encompassed by the shoreline. *Not only does the foregoing conform to the public policy of the uninterrupted and obstructed use of the Virgin Islands shorelines (see* 12 V.I.C. § 401), it further guarantees that the owners will maximize the limited usable beachfront footage (about 600 feet in length) for an area of more than 50 acres.

*Id.* at 156 (emphasis added). An examination of this language confirms that Judge Young was concerned with the public policies espoused in the Virgin Islands Open Shorelines Act, 12 V.I.C. § 401, *et seq.,* referring in particular to the "shoreline" as defined by that Act. Section 402 states that

[f]or the purposes of this chapter "shore-lines of the United States Virgin Islands" shall mean the area along the coastlines of the United States Virgin Islands from the seaward line of low tide, running inland a distance of fifty (50) feet; *or to the extreme seaward boundary of natural vegetation which spreads continuously inland; or to a natural barrier; whichever is the shortest distance.* Whenever the shore is extended into the sea by filling or dredging, the boundary of the shorelines shall remain at the line of vegetation as previously established.

12 V.I.C. § 402 (emphasis added). Accordingly, the local laws of the Virgin Islands expressly referred to by Judge Young clearly define the public shoreline as the *shorter* of 50′ inland or a boundary of natural vegetation (such as the berm line).

Pursuant to this reasoning, Judge Young ruled as follows:

ADJUDGED and DECREED .... There should be shown a beach easement from the water's edge *to the berm line*—approximately 50′ inland—on Parcels [1, 2A, 2B, 10A, 13A, and 16]. The line of Parcel[3] should be closer to the rocky shore.

*Harthman*, 12 V.I. at 156–57 (emphasis added). Moreover, the court added that

[a]ll owners of parcels and all future owners of plots which may or shall be subdivided from the parcels located in Estate Peter Farm, of Peter Bay, St. John, shall have a perpetual easement of the use and enjoyment of the beach area existing *approximately* 50′ inland from

8. As discussed, Blakeney received his property (Parcel 3) from Andrews Trust, who received it from the Partnership, subjecting it to the Protective Covenants of the Association.

the low water mark on all water parcels (except partially on [3] ).

*Id.* at 158 (emphasis added).

The only reasonable interpretation of Judge Young's language is that he intended the easement to run only to the vegetation berm. While the Commissioners recommended a 50′ easement, the court explicitly ruled that the easement should run to the "berm line," making specific reference to that natural boundary. *See, e.g.*, § 2.13 of the Restatement (Third) of the Law of Servitudes ("[i]n a conveyance or contract to convey an estate or land, description of the land conveyed by reference to a map or boundary may imply the creation of a servitude.") (emphasis added). Judge Young's decision was further supported with recitations to the Virgin Islands Open Shoreline Act that expressly favored the *shorter* distance between 50′ inland or any natural barrier. Therefore, consistent with the language therein, we conclude that, with the exception of Parcel 3 (now owned by Blakeney),[8] the 1975 *Harthman* opinion established a berm line easement across the Peter Bay beachfront properties.

**B.**

Because much has changed since the *Harthman* decision was issued in 1975, the easement as to the parcels belonging to non-Harthman heirs—the Stillmans (Parcel 10A), the Godinezes (Parcel 2A) and Burgamy (Parcel 1)—requires a further analysis. It must be determined whether subsequent transfers subjected these parcels to easements greater than those imposed by the *Harthman* decision.

In any event, very little, if any, of Parcel 3 is beachfront property and as such, that property would not be subject to an easement.

In the absence of contrary local law, Virgin Island courts are directed to apply the Restatement as the controlling law in the dispute. *See* 1 V.I.C. § 4 ("[t]he rules of the common law, as expressed in the [R]estatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."). Other than as provided in the deed of transfer, under § 4.1 of the Restatement (Third) of the Law of Servitudes, the scope of an easement is determined by examining the intent of the transferring parties, so long as public policy is not violated:

> (1) A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.
>
> (2) Unless the purpose for which the servitude is created violates public policy, and unless contrary to the intent of the parties, a servitude should be interpreted to avoid violating public policy. Among reasonable interpretations, that which is more consonant with public policy should be preferred.

§ 4.1 of the Restatement (Third) of the Law of Servitudes. As such, we must look to the undisputed intent of the conveying parties to determine whether they intended an easement to apply on their respective properties which was larger that the

berm line easement imposed by the *Harthman* court.

### 1. The Stillmans

■ The Stillmans received their Parcel 10A directly from John and Vernon Harthman, two original Harthman heirs. The conveyance was memorialized pursuant to a Warranty Deed dated August 26, 1992.

Despite its reference to the two maps which show a 50' easement across the Parcel 10A property, an examination of this deed clearly demonstrates that the intent of the parties was to subject the parcel with the same easement as established by the *Harthman* decision in 1975. With regard to easements and encumbrances burdening the property, the deed is very particular and specific, stating:

> SUBJECT, HOWEVER, to Virgin Islands zoning regulations and to the covenants, restrictions, easements and agreements of record, including the terms, conditions, restrictions and obligations of the Memorandum Opinion and Partition Decree dated August 21, 1975 in District Court Civil No. 414–1970, recorded with the Recorder of Deeds
> . . . .

It is clear that the parties intended that Parcel 10A be subject to the same easement established by Judge Young in the 1975 *Harthman* decision. Since, as previously discussed (*see* Section V.A., *supra*), the *Harthman* decision established a berm line easement, the Stillmans' property should similarly be burdened with only a berm line easement.[9]

Accordingly, we will affirm the District Court's August 2001 ruling which vacated its earlier July 1999 order. That 1999

---

**9.** The parties point to no place in the record—nor could any be located—showing that the Stillmans subjected its property to any additional encumbrances after it purchased the property. Indeed, it is undisputed that, unlike the parcels owned by the Godinezes (Parcel 2A) and Burgamy (Parcel 1), the Stillmans' property is not subject to the restrictions set forth in the Protective Covenants.

order had ruled that the Stillman's property (Parcel 10A) was subject to a 50′ easement. The August 2001 ruling properly subjected the Stillman's Parcel (Parcel 10A) to a berm line easement only.

### 2. The Godinezes and Burgamy

■ Conceding that the scope of the easement was subject to conflicting descriptions, the District Court nevertheless ruled in its August 2001 Opinion that the intent of the conveying parties regarding Parcels 2A (owned by the Godinezes) and 1 (owned by Burgamy) was to establish a berm line easement. In so ruling, the court reviewed, *inter alia*, a number of deeds establishing the chain of title to those properties. While many of these deeds referenced, directly or indirectly, a 50′ easement, the District Court concluded that each of these references was intended to refer to the easement established by Judge Young in the 1975 *Harthman* decision. Accordingly, the court attributed all references to the 50′ easement to "simple error," and held that the easements across each of these parcels also ran only to the vegetation berm line.

The District Court's analysis, however, is incomplete in that it failed to address the effect of the Protective Covenants as to each of the remaining parcels.[10] As an initial matter, the Protective Covenants, by their own terms, make clear that they apply to the parcels belonging to the Godinezes (Parcel 2A) and Burgamy (Parcel 1). *See* Recitals, Protective Covenants (stating that "the rights, conditions, covenants, reservations and restrictions" of the Protec-

tive Covenants apply to, *inter alia*, Parcels 1 and 2A). Furthermore, those Covenants clearly and unequivocally establish a 50′ easement across each of the parcels affected:

[t]he term "Common Areas" shall mean those portions of Peter Bay which, whether owned in fee simple by the Association or subject to easements or rights of way for the benefit of the Association and/or the Owners, are used and reserved for the common benefit of all the Owners. As of the date of this Declaration, the Common Areas include . . . (ii) the 50 foot beach easement as shown on [the 1988 map].

Definition of "Common Areas," Protective Covenants. The question arises, therefore, whether these Protective Covenants evidenced an intent by the Partnership to establish a greater easement than that established by the *Harthman* decision.

In making its August 2001 ruling that the parcels were subject to a berm line easement, the District Court—reviewing materials *other* than the Protective Covenants—noted that it considered it extremely unlikely that "the grantors would expand the easement for the collective benefit of Peter Farm owners without either doing so expressly in the deed or mentioning such intent to other owners." *Peter Bay Owners Assoc.*, 163 F.Supp.2d at 549 (D.V.I. 22, 2001). In so stating, the District Court expressed disbelief as to why parties would burden their properties with *greater* restrictions prior to transfer.

---

10. The Stillmans, the Godinezes and Burgamy suggest that the Protective Covenants may not have been entered properly into evidence before the District Court. However, their contention is belied by the record, which demonstrates that the issue of the Protective Covenants was raised before the District Court well before it issued its July 1999 Opin-

ion. *See* Association's Cross–Motion for Summary Judgment dated February 5, 1998 at 9 (attaching a copy of the Protective Covenants and arguing that the Protective Covenants established a 50′ easement); *see also* Association's Reply to Cross–Motion for Summary Judgment, dated March 23, 1998 at 3.

The very purpose of the Protective Covenants, however, addresses the District Court's skepticism. The covenants exist to expand and define greater restrictions than what is otherwise permitted by law for the "collective benefit of Peter Bay owners." The recitals of the Protective Covenants provide:

WHEREAS, St. John Land Investment Partnership has established a general plan for the improvement and development of the subdivision known as Peter Bay and now desires to establish a *uniform standard of rights, conditions, covenants, reservations and restrictions for all the parcels located in said subdivision which shall run with the land.... Each and every one of these rights, conditions, covenants, reservations and restrictions are for the benefit of each Buyer and Owner of each Lot in Peter Bay ...* and shall insure to and pass with each and every Lot of such subdivision, and shall bind the respective heirs, assigns and successors in interest of the present owner thereof.... All deeds to parcels within Peter Bay shall incorporate this Declaration by reference thereto and by citation of the recording thereof in the Office of the Recorder of Deeds of St. Thomas and St. John.

Recitals, Protective Covenants (emphasis added). As is the case with many developers seeking to establish communal residences, it is evident that the Partnership desired to burden its property with restrictions *greater* than that which was imposed by law. Accordingly, the Partnership expressed the very intention that the District Court found lacking—the intent to further restrict and bind the parcels of land for the common benefit of Peter Bay owners.

Nor is there any evidence suggesting that the imposition of the 50' easement in the Protective Covenants resulted from an erroneous interpretation of the 1975 *Harthman* decision. Indeed, the Protective Covenants make no mention of the 1975 opinion, and there is no mention of a berm line easement throughout any of its terms.

■■■ Moreover, it is undisputed that the parcels belonging to the Godinezes (Parcel 2A) and Burgamy (Parcel 1) are subject to the Protective Covenants. For instance, the deeds reflecting chain of title to the Godinezes parcel (Parcel 2A) reference the Protective Covenants. The Warranty Deed made between the Partnership and Danzler Lumber Co., dated December 14 1988, subjects Parcel 2A to the following restrictions:

TOGETHER WITH a perpetual easement of access for ingress and egress over road R.O.W. Parcels B and D, and the other easements, rights and privileges contained in the Declaration of Protective Covenants for Peter Bay, St. John, Virgin Islands ... recorded November 4, 1988 in Book 33–C, Page 108, in the Office of the Recorder of Deeds for St. Thomas and St. John, Virgin Islands.[11]

On May 13, 1993, Danzler Lumber Co. conveyed Parcel 2A to its president, Antonio Godinez, and his wife, Bonnie Godinez. While that later deed does not expressly refer to the Protective Covenants, it does incorporate the 1988 deed between Danzler Lumber and the Partnership, which—as discussed—does reference the Protective Covenants.

11. That deed also specifically references the 1975 *Harthman* decision. However, that reference does not change the conclusion that Parcel 2A should be subject to a greater 50' easement since: (1) the Harthman decision imposes a number of obligations on Peter Bay owners unrelated to easements; and (2) as previously noted, the Partnership is able to, and did, impose restrictions greater than those otherwise imposed by law.

With regard to Burgamy's parcel (Parcel 1), although the chain of title is incomplete in this record, Burgamy cannot—and does not—dispute the fact that his parcel is subject to the Protective Covenants. As noted, Parcel 1 is expressly covered by the terms of the Protective Covenants, and while the deed conveying Burgamy's property is not before us, it is evident that such a deed would reference the Protective Covenants. *See* Recitals, Protective Covenants ("All deeds to parcels within Peter Bay shall incorporate [the Protective Covenants] by reference thereto and by citation of the recording thereof in the Office of the Recorder of Deeds of St. Thomas and St John."). Indeed, Burgamy presents no evidence suggesting otherwise.[12]

In light of the reasons provided, we will reverse the District Court's August 2001 ruling that the parcels owned by the Godinezes (Parcel 2A) and Burgamy (Parcel 1) are subject to a berm line easement and rule instead that the Protective Covenants impose a 50′ easement across those properties.

## VI.

For the reasons discussed above, we conclude that the District Court properly exercised subject matter jurisdiction to decide the issues discussed in its August 2001 Opinion. Moreover, we will affirm the District Court's order that the Stillmans' Parcel (Parcel 10A) is encumbered by a berm line easement. However, we will reverse the District Court's order establishing a berm line easement across the properties owned by the Godinezes (Parcel

2A) and Burgamy (Parcel 1). Instead, we will order that both the properties owned by the Godinezes (Parcel 2A) and Burgamy (Parcel 1) are subject to a 50′ easement pursuant to the restrictions contained in the Protective Covenants.

---

12. The Godinezes and Burgamy also contend that the arguments concerning the Protective Covenants were waived below because the appellants failed to raise this issue in opposing the Godinezes' and Burgamy's motion for reconsideration. However, there is no dispute that the appellants did, in fact, raise the Protective Covenants issue in their respective cross-motions for summary judgment. *See* note 10, *supra*. The Godinezes and Burgamy cite no authority—and we are aware of none—supporting the proposition that a failure to raise the same issue again in opposing a motion for reconsideration waives the ability to raise that issue on appeal.