# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ESTATE OF SYBIL JAYSON, by Personal Representative, Kenneth Jayson, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. N24C-12-216 PRW |
| U.S. BANK NATIONAL ASSOCIATION and VC 3 LS 2021 L.P., | ) ) ) | CCLD |
| Defendants. | ) ) ) | |

Submitted: July 23, 2025
Decided: October 20, 2025

*Upon Defendants' Motions to Dismiss,*
**DENIED.**

Kaan Ekiner, Esquire, and Nathan Barillo, Esquire, COZEN O'CONNOR P.C., Wilmington, Delaware; Michael J. Miller, Esquire, Brian D. Burack, Esquire (*argued*), Duncan R. Becker, Esquire (*argued*), Benjamin J. Kampf, Esquire, COZEN O'CONNOR P.C., Philadelphia, Pennsylvania; Daniel R. Miller, Esquire, WALDEN MACHT HARAN & WILLIAMS, LLP, Wilmington, Delaware, *Attorneys for Plaintiff The Estate of Sybil Jayson.*

Nathan R. Hoeschen, Esquire, and Lindsey M. Gellar, Esquire, SHAW KELLER LLP, Wilmington, Delaware; Matthew A. Martel, Esquire (*argued*), Christopher M. Morrison, Esquire, Joseph B. Sconyers, Esquire, and Lauren Straight, Esquire, JONES DAY, Boston, Massachusetts, *Attorneys for Defendant U.S. Bank National Association.*

Steven L. Caponi, Esquire, Robert K. Beste, Esquire, and Michael J. Vail, Esquire, K&L GATES LLP, Wilmington, Delaware; Richard W. Krebs, Esquire (*argued*), ORRICK, HERRINGTON & SUTCLIFFE LLP, Irvine, California; Robert E. Griffin, Esquire, MCDERMOTT WILL & SCHULTE LLP, New York, New York, *Attorneys for Defendant VC 3 LS 2021 L.P.*

**WALLACE, J.**

This is an action under 18 *Del. C.* § 2704(b) to recover proceeds of an alleged stranger-oriented life insurance ("STOLI") policy. Kenneth Jayson, as representative of his deceased wife Sybil's estate (the "Estate"), brings this action to recover policy proceeds paid to U.S. Bank National Association and transferred to VC 3LS 2021 L.P. ("Viva").

U.S. Bank and Viva move to dismiss the Amended Complaint alleging: lack of capacity; lack of personal jurisdiction; and failure to state a claim. Specifically, Viva argues that because no Delaware court had recognized Mr. Jayson's representative role when he filed the complaint, he can't bring an action under § 2704(b). U.S. Bank argues that the Court doesn't have personal jurisdiction over it because: it is not a Delaware corporation; its formation of a Delaware entity is not related to this cause of action; and, it otherwise doesn't have sufficient contacts with Delaware. Additionally, U.S. Bank maintains that it was just an intermediary that passed along policy proceeds to Viva, and thus it isn't a proper defendant under 2704(b). Finally, U.S. Bank insists that the National Bank Act preempts the Estate's claim.

For the reasons now explained, both Viva's and U.S. Bank's motions to dismiss are **DENIED**.

# I. FACTUAL[1] AND PROCEDURAL BACKGROUND

## A. THE PARTIES

Sybil Jayson was a citizen of Florida at the time of her death.[2] Mrs. Jayson's widowed husband, Kenneth Jayson, and the Estate are both Florida citizens.[3]

U.S. Bank is a national banking association with its primary place of business in Ohio.[4] U.S. Bank was the record owner and beneficiary of the at-issue life insurance policy (the "Policy.")[5]

Viva is a Delaware limited partnership.[6]

## B. THE ALLEGED STOLI POLICY TRANSACTIONS

In the Amended Complaint, the Estate depicts a sophisticated financial operation whereby a group of interrelated Delaware entities known as "Coventry" maintained a STOLI program.[7] Coventry would originate the policies and sell them to Lavastone Capital LLC.[8] Coventry enlisted U.S. Bank and Wells Fargo to assist

---

[1] Unless otherwise noted, the following facts are drawn from the Estate's Amended Complaint ("Am. Compl.") and the documents attached and integral to it (D.I. 8). *See Windsor I, LLC v. CW Capital Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020) ("In most cases, when the Superior Court considers a 12(b)(6) motion, it limits analysis to the 'universe of facts' within the complaint and any attached documents.").

[2] Am. Compl. ¶ 5.

[3] *Id.*

[4] *Id.* ¶ 6.

[5] *Id.*

[6] *Id.* ¶ 7.

[7] *See generally* Am. Compl.

[8] *Id.* ¶ 37.

in these sales.[9]  U.S. Bank would serve in various roles, including trustee, fiscal agent, or securities intermediary.[10]  The companies would create trusts and sub-trusts to hold the policies.[11]

In 2001, as part of the program, U.S. Bank filed a Certificate of Trust with the Delaware Secretary of State to create the Coventry Life Settlements Titling Trust (the "Delaware Titling Trust").[12]  U.S. Bank acted as the trustee and the securities intermediary for the Delaware Titling Trust.[13]  As well, U.S. Bank created the Delaware Titling Trust to receive, aggregate, and hold life insurance policies Coventry procured as investments for American International Group ("AIG").[14]

In 2005, a Coventry-created trust, the Sybil Jayson Life Insurance Trust, applied for the Policy from PHL Variable Insurance Company.[15]  Coventry then created a sub-trust that held the Policy in Delaware.[16]

Two years later, the Policy was securitized and sold to Viva.[17]  U.S. Bank

---

[9]  *Id.*

[10]  *Id.*

[11]  *Id.* ¶ 46.

[12]  *Id.* ¶ 15.

[13]  *Id.* ¶ 17.

[14]  *Id.* ¶ 53.

[15]  *Id.* ¶¶ 64, 75.

[16]  *Id.* ¶ 78.

[17]  *Id.* ¶ 83.

served as a securities intermediary.[18]   U.S. Bank was also the record owner and beneficiary of the Policy.[19]

Mrs. Jayson passed away in late 2021.[20]   U.S. Bank made a claim on the Policy and received the death benefit.[21]   U.S. Bank then transferred the death benefit to Viva.[22]

In 2022, a Florida court appointed Mr. Jayson as the representative of his wife's estate.[23]   After initiating this action, the Estate obtained Letters of Ancillary Administration in Delaware.[24]

## C. THIS LITIGATION

The Estate brings the action via a one-count operative complaint.[25]   The Estate seeks the recovery of the Policy's proceeds pursuant to § 2704(b).   Viva and U.S. Bank have each moved to dismiss.[26]   The Estate filed its opposition to each motion.[27]

---

[18]   *Id.* ¶ 85.

[19]   *Id.* ¶ 91.

[20]   *Id.* ¶ 90.

[21]   *Id.* ¶ 91.

[22]   *Id.* ¶ 106.

[23]   *Id.* ¶ 5.

[24]   Attachment 1 to Letter (D.I. 53).

[25]   *See* Am. Compl..

[26]   Defendant VC 3 LS 2021 L.P.'s Motion to Dismiss the First Amended Complaint ("Viva Mot.") (D.I. 26) and Defendant U.S. Bank National Association's Motion to Dismiss the First Amended Complaint ("U.S. Bank Mot.") (D.I. 27).

[27]   Plaintiff's Brief in Opposition to Defendant VC 3 LS 2021 L.P.'s Motion to Dismiss ("Opp'n. to Viva Mot.") (D.I. 39) and Plaintiff's Brief in Opposition to Defendant U.S. Bank National

Viva and U.S. Bank then filed their replies.[28]  The Court has heard argument[29] and the dismissal motions are now ripe for decision.

## II. STANDARD OF REVIEW

A motion challenging one's standing to bring suit is properly brought under Civil Rule 12(b)(6).[30]  In resolving a Rule 12(b)(6) motion, the Court "(1) accept[s] all well-pleaded factual allegations as true; (2) accept[s] even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, (3) draw[s] all reasonable inferences in favor of the non-moving party, and (4) [will not dismiss a claim] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[31]  But, the Court need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[32]  And the Court is not required to accept "every strained interpretation of the allegations proposed by the plaintiff."[33]

Association's Motion to Dismiss ("Opp'n. to U.S. Bank Mot.") (D.I. 40).

[28]  Defendant VC 3 LS 2021 L.P.'s Reply Brief in Support of its Motion to Dismiss the First Amended Complaint ("Viva Reply") (D.I. 44) and Defendant U.S. Bank National Association's Reply Brief in Support of its Motion to Dismiss the First Amended Complaint ("U.S. Bank Reply") (D.I. 45).

[29]  D.I. 55 and 57.

[30]  *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 199 (Del. Super. Ct. 2020).

[31]  *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

[32]  *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[33]  *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

Viva's attack on the Estate's capacity to sue falls under this Court's Rule 9(a).[34] Upon such challenge the Court must weigh the evidence presented.[35]

A non-resident defendant may move to dismiss for lack of personal jurisdiction under this Court's Civil Rule 12(b)(2).[36] "Generally, a plaintiff does not have the burden to plead in its complaint facts establishing a court's personal jurisdiction over [a non-resident] defendant."[37] But when Rule 12(b)(2) is invoked, the plaintiff does shoulder such a burden.[38] And where, as here, no meaningful discovery has been conducted, that burden is a *prima facie* one.[39] In assessing the plaintiff's lift, the Court "is not limited to the pleadings and can consider affidavits,

[34]   "When a party desires to raise an issue as to the legal existence of any party, or the capacity of any party to sue or be sued, or the authority of a party to sue or be sued in a representative capacity, the party shall do so by specific negative averment . . . which negative averment shall include such supporting particulars as are peculiarly within the pleader's knowledge." Del. Super. Ct. Civ. R. 9(a).

[35]   *See In re Jenzabar, Inc. Derivative Litg.*, 2014 WL 3827501, at *5 (Del. Ch. July 30, 2014) (explaining that "on a motion to dismiss pursuant to [Chancery] Rule 9(a), this Court may consider supporting evidence of such capacity, or lack thereof"). Precedent resolving dismissal motions filed under the Court of Chancery's analogue rules is usually of equal influence when addressing those filed under this Court's. *E.g.*, *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, 2020 WL 3564622, at *9 n.65 (Del. Ch. June 29, 2020) (finding no difference in the Rule 12(b)(2) context and collecting authority); *see also Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 199 n.21 (Del. Super. Ct. 2020) (finding no difference in the Rule 12(b)(6) context and collecting authority). So, the Court cites to both courts' cases herein.

[36]   Del. Super. Ct. Civ. R. 12(b)(2).

[37]   *Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 800 (Del. Ch. 2020) (internal quotation marks and citation omitted).

[38]   *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437-38 (Del. 2005).

[39]   *E.g.*, *Endowment Rsch. Grp., LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049, at *4 (Del. Ch. Mar. 5, 2021).

briefs of the parties," and the record as a whole.[40]  Still, unless contradicted by affidavit, the Court must (1) accept as true all well-pleaded allegations in the complaint; and (2) construe the record in the light most favorable to the plaintiff.[41]

## III.  PARTIES' CONTENTIONS

### A. THE ESTATE'S STANDING AND CAPACITY

Viva argues that the Estate failed to obtain Letters of Ancillary Administration in Delaware prior to suing, and therefore didn't have standing to file suit in Delaware.[42]  First, Viva asserts that the Florida appointment has no force or effect in Delaware without ancillary administration, and thus the Estate couldn't bring suit.[43]  Second, Viva claims that the Estate has not alleged that any of the proceeds are located in Delaware that would allow for Mr. Jayson to seek or exercise "ancillary authority" in Delaware.[44]

The Estate counters that a Rule 12 motion is procedurally improper for attacking a litigant's authority to sue in a representative capacity.[45]  Instead, it argues, Viva should have filed its motion following the procedures in Rule 9(a).[46]

---

[40] *Green Am. Recycling, LLC v. Clean Earth*, 2021 WL 2211696, at *3 (Del. Super. Ct. June 1, 2021).

[41] *Id.*

[42] Viva Mot. at 4.

[43] *Id.* at 5-6.

[44] *Id.* at 8.

[45] Opp'n. to Viva Mot. at 5.

[46] *Id.*

On the merits, the Estate avers that the statute grants the Estate standing because it doesn't say that the Estate must receive ancillary administration.[47]  Additionally, it says, principles of comity give the Estate standing.[48]  Finally, it insists, even if the Estate didn't have authority at the time of filing this action, it does now.[49]

## B. PERSONAL JURISDICTION OVER U.S. BANK

U.S. Bank claims that it isn't subject to personal jurisdiction because the Estate doesn't allege that U.S. Bank received or took any action in Delaware with respect to the proceeds from the Policy.[50]  U.S. Bank also argues that the Estate hasn't alleged that U.S. Bank took any actions in Delaware specific to the Policy.[51] Further, it contends that it was only acting in an administrative capacity, so it wasn't acting in furtherance of an illicit scheme.[52]  And, it says that entering into a contract in Delaware with a Delaware entity is insufficient.[53]  U.S. Bank highlights that the Estate's allegations are conclusory with respect to U.S. Bank's subsidiary.[54]  Finally, U.S. Bank  maintains that requiring it to litigate in Delaware violates its due process

---

[47]  *Id*. at 6-7.

[48]  *Id*. at 9.

[49]  *Id*. at 10-11.

[50]  U.S. Bank Mot. at 7.

[51]  *Id*.

[52]  *Id*. at 8.

[53]  *Id*.

[54]  *Id*. at 9-10.

rights.[55]

To all this, the Estate responds that Delaware's federal district court has already held, under the same STOLI scheme, that U.S. Bank is subject to personal jurisdiction in Delaware.[56]

In a last gasp on personal jurisdiction, U.S. Bank says it isn't a proper defendant in this action because the proceeds never belonged to U.S. Bank, and it transferred the proceeds to Viva.[57]

The Estate counters that U.S. Bank is a proper defendant under § 2704(b)'s plain language, and that the Delaware Supreme Court has rejected U.S. Bank's arguments to the contrary.[58]

## C. PREEMPTION

In U.S. Bank's view, as to this action, the National Bank Act preempts 18 *Del. C.* § 2704(b).[59]  The Estate replies that the National Bank Act's potential protection is not quite as broad as U.S. Bank suggests.[60]

## IV.  DISCUSSION

---

[55]  *Id*. at 10.

[56]  Opp'n. to U.S. Bank Mot. at 6-7 (citing *Ameritas Life Ins. Corp. v. U.S. Bank, Nat'l Ass'n (Sloan)*, 2023 WL 9419169 (D. Del. Oct. 5, 2023).

[57]  U.S. Bank Mot. at 10-13.

[58]  Opp'n. to U.S. Bank Mot. at 15.

[59]  U.S. Bank Mot. at 13-22.

[60]  Opp'n. to U.S. Bank Mot. at 19-29.

## A. Viva's Motion is Procedurally Proper.

Rule 9(a) states that when a party wishes to challenge the "capacity of any party to sue or be sued, or the authority of a party to sue or be sued in a representative capacity, the party shall do so by specific negative averment . . . ."[61] But Rule 9(a) sets no separately discernable procedure by which to make such a challenge, providing only that the required "negative averment shall include such supporting particulars as are peculiarly within the pleader's knowledge."[62] In turn, a party may bring such a challenge through any procedural vehicle normally available at the pleading stage.[63]

It's true that Rule 9(a) requires certain challenges to be accompanied by an affidavit, pursuant to Rule 8(dd)—*i.e.*, if challenger is contesting the existence of a corporation or partnership, the signatures on a document, or the agency of an operator of a motor vehicle.[64] But that's not what's happening here. And the

---

[61] Del. Super. Ct. Civ. R. 9(a).

[62] *Cf. id* (providing that the averment does need be "supported by affidavit *when required* by Rule 8(dd)") (emphasis added).

[63] *See* Wright & Miller, *Federal Rules of Civil Procedure* § 1294 ("[I]f the lack of capacity, authority, or legal existence issue appears on the face of the pleadings or is discernible therefrom, the issue can be raised by a motion to dismiss for failure to state a claim for relief. A motion to strike, a motion for judgment on the pleadings, or a motion for summary judgment may also be employed to raise capacity challenges. . . ."); *see also Silliman v. DuPont*, 302 A.2d 327, 330 (Del. Super. Ct. 1972) (determining that it is procedurally proper to challenge partnership's capacity to sue under Rule 12(c)); *Silver View Farm Tenant Ass'n, Inc. v. Silver View Farm, Inc.*, 1989 WL 5109, at *3 (Del. Super. Ct. Jan. 24, 1989) ("[D]efendant asserted failure to state a claim and [] this defense governs an objection to capacity to sue . . .").

[64] Del. Super. Ct. Civ. R. 9(a); Rule 8(dd).

Estate's reliance on this Court's decisions in *Financeamerica Private Brands, Inc. v. Harvey Hall, Inc.*[65] and *Spanish Tiles v. Hensey*[66] to say Rule 9(a) somehow provides a singular mechanism for all capacity challenges is not well-placed.

In *Financeamerica*, defendants were challenging a signature and the existence of a corporate entity, but didn't comply with the Rule 8(dd) affidavit requirement.[67] *Financeamerica* cites to *G.R. Sponaugle & Sons, Inc. v. McKnight Construction Co.*[68] when discussing Rule 9(a).[69] And at bottom, *G.R. Sponaugle & Sons* holds only that the averment of lack of capacity to sue under Rule 9(a) must be timely made, and can't be raised for the first time at summary judgment.[70]

Similarly, in *Spanish Tiles* this Court denied a challenge to a corporation's capacity to sue that was untimely, recognizing that a capacity challenge must be raised and disposed of at the suit's outset.[71]

Here, Viva isn't challenging a corporation's existence or the validity of signatures. So, no Rule 8(dd) affidavit is needed.

Most simply put, Viva brought its capacity challenge at the first available

---

[65] 366 A.2d 836 (Del. Super. Ct. 1976).

[66] 2009 WL 86609, at *2-3 (Del. Super. Ct. Jan. 7, 2009).

[67] *Financeamerica*, 366 A.2d, at 836-38.

[68] 304 A.2d 339 (Del. Super. Ct. 1973).

[69] *Financeamerica*, 366 A.2d, at 838.

[70] *G.R. Sponaugle & Sons*, 304 A.2d at 343.

[71] *Spanish Tiles*, 2009 WL 86609, at *2.

opportunity and its pleading-stage motion asserting such is procedurally proper.[72]

## B. THE ESTATE HAS BOTH STANDING AND CAPACITY TO MAINTAIN THIS SUIT.

There is no question that Mr. Jayson is the validly appointed representative of the Estate.[73] And there is no question that the Estate has standing to bring this action under § 2704(b)'s plain language.[74] Thus, Viva's motion, while styled as a motion to dismiss for lack of standing, is really a motion to dismiss for lack of capacity. After briefing, the Estate obtained the necessary ancillary administration approval.[75] So the question now is whether a party can cure a defect in capacity to sue, and if not, whether the Estate was required to seek ancillary administration approval before bringing this action.

In Delaware, parties can cure a capacity defect.[76] And here, if there ever were

---

[72] *See G.R. Sponaugle & Sons*, 304 A.2d at 342 ("The issue of whether a corporation has status to litigate is a question of capacity, and must be timely raised.").

[73] *See* Opp'n. to Viva Mot. Ex. 1.

[74] *Wells Fargo Bank, N.A. v. Estate of Malkin*, 278 A.3d 53, 61 (Del. 2022) ("By providing that an estate "may maintain an action" to recover death benefits, Section 2704(b) confers standing on the estate and codifies the longstanding common-law rule that, if the insurer pays the death benefit on a policy that lacks an insurable interest, the estate may sue to receive that benefit.").

[75] Attachment 1 to Letter (D.I. 53).

[76] *Cf. Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 263 (Del. 1993) ("*Rule 15(a) affords the parties the right*, *inter alia*, to state additional claims, to increase the amount of damages sought, to establish additional defenses, and *to change the capacity in which the action was commenced*.") (emphases added); *Kwiatkowski v. Shellhorn & Hill, Inc.*, 201 A.2d 455, 456 (Del. Super. Ct. 1964) ("[A] change in the capacity in which a party sues is often recognized as proper grounds for an amendment [of the complaint] even after the statute of limitations has run."). This is in accord with other jurisdictions. *See, e.g., Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 853 n.7 (Tex. 2005) ("The burden is on the defendant to challenge capacity via verified plea, and the trial court should abate the case and give the plaintiff a reasonable time to cure any defect."); *Vorhees v. Baltazar*, 283 Kan. 389 (2007) (same); *Missouri,*

such defect, the Estate has cured it.

Viva's invocation of 12 *Del. C.* §§ 1565 and 1566 to argue that the Estate had to obtain ancillary administration to initiate (and maintain) its suit is unavailing.[77]

Section 1565 (Proof of authority and bond) provides:

> If no local ancillary administration or application or petition therefor is pending in this State, a domiciliary foreign personal representative may file with the Register of Wills in this State in a county in which property belonging to the decedent is located exemplified copies of the domiciliary foreign personal representative's appointment and of any official bond given.[78]

Section 1566 (Powers) provides:

> A domiciliary foreign personal representative who has complied with § 1565 of this title may exercise as to assets in this State all powers of a local personal representative and may maintain actions and proceedings in this State subject to any conditions imposed upon nonresident parties generally and provided that such domiciliary foreign personal representative complies with § 1905 of this title governing the filing of an inventory and appraisal of estate assets consisting of tangible personal property and real estate actually situated within this State.

It's not clear that these statutes apply in this circumstance. To obtain the powers in § 1566, a representative may comply with § 1565. But Section 1565

---

*K. & T. Ry. Co. v. Wulf*, 226 U.S. 570, 576-577 (1913) (plaintiff was allowed to amend complaint to sue in her representative capacity for son's estate).

[77]   Viva Reply at 8.

[78]   DEL. CODE ANN. tit. 12, § 1565 (2024).

-14-

requires the representative to file for authority "with the Register of Wills in this State *in a county in which property belonging to the decedent is located . . . .*" Thus, it would seem the procedures in §§ 1565 and 1566 are applicable only to representatives seeking to maintain suits over property located in Delaware. These statutes don't address a foreign representative's authority to sue in Delaware over property not located in Delaware but that is the express subject matter of a Delaware suit by statute.

Absent a clear statutory dictate that the Estate must receive ancillary administration to bring a § 2704 suit, the Restatement (Second) of Conflicts of Laws provides helpful guidance.[79] Restatement § 354 provides that a "foreign executor or administrator may maintain an action to enforce a claim belonging to the decedent . . . (3) when maintenance of the suit is in the best interests of the estate and will not prejudice the interests of local creditors, or (4) when otherwise authorized by the local law of the forum."[80]

First, maintenance of the suit is in the best interests of the Estate. The suit's success stands to bring significant funds into the Estate. What's more, the Estate has averred that there are no local creditors in Delaware.[81]

---

[79] *HighTower Holding, LLC v. Gibson*, 2023 WL 1856651, at *5 (Del. Ch. Feb. 9, 2023) ("Delaware follows the Restatement (Second) of Conflicts of Laws . . . .").

[80] Restatement (Second) of Conflicts of Law § 354 (1971).

[81] Opp'n. to Viva Mot. at 4, 10.

-15-

Second, and most importantly, § 2704(b)'s plain language authorizes the Estate to sue.[82]

"When interpreting a statute, the Court's priority is to determine and give effect to legislative intent . . . . If a statute is found to be clear and unambiguous, then the plain meaning of the statutory language controls."[83] But statutory language should be deemed ambiguous only "when it is reasonably susceptible to different conclusions or interpretations."[84] And even "[w]hen statutory language is ambiguous, it should be interpreted in a way that will promote its apparent purpose and harmonize it with the statutory scheme."[85]

No doubt, the legislature when enacting § 2704(b) intended to allow foreign administrators to bring suit to recover STOLI-policy proceeds without the need to seek ancillary administration; it expressly empowered executors and administrators to bring such action within that statute's language itself. But Viva suggests that elsewhere the Legislature secreted an additional—and what would oft be fatal—requirement.

As discussed above, a foreign representative can only seek ancillary administration authorization under § 1565 if the subject estate property is in

---

[82]   DEL. CODE ANN. tit. 12, § 1565 (2024).

[83]   *Judicial Watch, Inc. v. University of Delaware*, 267 A.3d 996, 1004 (Del. 2021).

[84]   *Id.*

[85]   *Id.*

Delaware. Under Viva's read of the invoked Title 12 and 18 provisions, a foreign representative could never sue an entity in Delaware for violating § 2704(b) where the proceeds were received in Delaware and then moved out-of-state. Such an interpretation would defeat the obvious underlying purposes of § 2704(b) and allow entities to engage in otherwise unconstitutional human-life wagering with little real opportunity for enforcement. If need truly be, the cited statutes require harmonization so as to avoid such absurd or mischievous results.[86]

## C. THE COURT HAS PERSONAL JURISDICTION OVER U.S. BANK.

To determine if the Estate has demonstrated a *prima facie* basis for this Court exercising personal jurisdiction over U.S. Bank, the Court engages a two-pronged inquiry: first, it must determine that service of process is authorized by statute, and "then [it] must determine that the exercise of jurisdiction over the nonresident defendant comports with traditional due process notions of fair play and substantial

---

[86] *See Terex Corporation v. Southern Track & Pump, Inc.*, 117 A.3d 537, 543-44 (Del. 2015) ("An ambiguous statute should be construed in a way that will promote its apparent purpose and harmonize it with other statutes within the statutory scheme. All of the pertinent statutory language should be given full effect to produce the most consistent and harmonious result under the wording of the section.") (cleaned up); *see also Del. Bay Surgical Srvcs., P.C. v. Swier*, 900 A.2d 646, 652 (Del. 2006) ("If uncertainty does exist, the statute must be construed to avoid 'mischievous or absurd results.'") (quoting *Moore v. Wilmington Housing Auth.*, 619 A.2d 1166, 1173 (Del. 1993)). *See generally E.I. Du Pont De Nemours & Co. v. Clark*, 88 A.2d 436, 438 (Del. 1952) ("The object of statutory construction is to give, if possible, a sensible and practical meaning to a statute as a whole. . . ."); *see Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 343 (Del. 2012) ("According to the golden rule of statutory interpretation, 'unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result.'") (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1247 (Del. 1985)).

justice."[87]

Forming a Delaware entity constitutes a transaction of business within Delaware to establish specific personal jurisdiction under 10 *Del. C.* § 3104(c)(1) if the cause of action arises from the formation.[88]

The Court weighs two factors to determine the nexus between entity formation and the causes of action: (1) the factual relationship between the formation of the Delaware entity and the cause of action; and (2) the degree of involvement that defendant had in forming the entity.[89] A cause of action is sufficiently related to the entity's formation if the formation set in motion a series of events that form the cause of action's basis.[90]

The Delaware District Court's analysis in *Ameritas Life Ins. Corp. v. U.S. Bank, Nat'l Ass'n*[91] is more than on point in this instance—it's identical. Here, like in *Ameritas*, U.S. Bank doesn't "dispute that it formed the [Delaware] Titling Trust in Delaware in 2001. . . . [T]hat qualifies as transacting business in the state."[92] Further, "the act of forming the [Delaware] Titling Trust has a sufficient nexus to

---

[87] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

[88] *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, 2017 WL 3575712, at *5 (Del. Ch. Aug. 18, 2017).

[89] *Id.* at *7.

[90] *Id.*

[91] 2023 WL 9419169, at *4-5 (D. Del. Oct. 5, 2023).

[92] *Ameritas*, 2023 WL 9419169, at *4.

the alleged wrongful bet on [Mrs. Jayson's] life because it was part of Coventry's alleged wrongful scheme to generate life insurance policies on seniors so that it could sell them to AIG. That alleged scheme involved a pre-existing contractual arrangement between Coventry, AIG, and U.S. Bank under which U.S. Bank was obligated to and did create the [Delaware] Titling Trust as a Delaware statutory trust to be used as a storehouse to hold and maintain life insurance policies . . . . The formation of the [Delaware] Titling Trust back in 2001, before the [Jayson] policy was even issued, also set in motion a series of events that led to the issuance of the policy and to [this lawsuit]."[93]

On due process, the federal court said: "By forming a Delaware statutory trust for the purpose of holding life insurance policies to be obtained by Coventry for sale to AIG, U.S. Bank has purposely availed itself of Delaware's laws and established minimum contacts such that it is foreseeable that it could be subjected to suit there based on a claim that a policy subsequently obtained pursuant to that arrangement is unenforceable."[94]

U.S. Bank argues that this Court should reach a different conclusion because this claim arises from the proceeds of the Policy (rather than an insurer seeking a declaration that the Policy is void) and because the beneficial owner (Viva) is a party

---

[93]  *Id.*

[94]  *Id.* at *5.

to this action. Neither argument is persuasive.

There is no meaningful distinction in the relationship between U.S. Bank's acts in Delaware and a cause of action for STOLI-policy proceeds as opposed to one seeking a declaration that a STOLI policy is void. It's a difference of requested relief, but not a fundamentally different claim that changes the actor's relationship.

Further, that Viva is a party doesn't impact the Court's jurisdiction over U.S. Bank. While not well-developed, it appears U.S. Bank's argument is that because the party that may be ultimately liable is present in the action, then the Court doesn't need to exercise jurisdiction over U.S. Bank. That is no ground to ignore or deny personal jurisdiction over those who may be rightly sued. Personal jurisdiction is based on a party's conduct in Delaware, not the Court's ability to award complete relief from that party.

### D. U.S. BANK IS A PROPER DEFENDANT.

Section 2704(b) provides that if "the beneficiary" receives payment upon death under a STOLI policy, the executor "may maintain an action to recover such benefits from the person so receiving them." The Estate has alleged that U.S. Bank was the beneficiary under the Policy[95] and that U.S. Bank received the death benefit.[96] Thus, the Estate has adequately alleged that U.S. Bank is a proper

---

[95] Am. Compl. ¶ 6.

[96] *Id.* ¶ 91.

defendant.

U.S. Bank points out that it is alleged to have transferred the proceeds to Viva. In turn, U.S. Bank may be "unlikely to face ultimate liability under Section 2704(b)."[97] That's an issue for U.S. Bank and Viva to work out, either as a matter of the contract, agency law, or perhaps during this litigation.[98] But at this stage, even assuming U.S. Bank did transfer the proceeds to Viva, that fact has no bearing on if U.S. Bank should be deemed is a proper defendant.

### E. IT'S TOO EARLY TO DETERMINE U.S. BANK'S AS-APPLIED PREEMPTION CHALLENGE TO 18 *DEL. C.* § 2704(b).

"[P]reemption is an affirmative defense that Defendant bears the burden to prove."[99] A federal statute can either expressly or impliedly preempt state laws.[100] There are two types of implied preemption, "field preemption" or "as-applied preemption," also sometimes called "conflict preemption."[101]

U.S. Bank doesn't argue that the National Bank Act expressly preempts § 2704(b). Instead, it brings an as-applied challenge. The Court engages a two-part test in analyzing an as-applied preemption challenge: (1) whether the state law is

---

[97] *Wells Fargo Bank, N.A. v. Estate of Malkin*, 278 A.3d 53, 67 (Del. 2022).

[98] *Id.*

[99] *Insolvency Servs. Grp., Inc. v. Comcast Cable Commc'ns, LLC*, 2021 WL 4477000, at *2 (D. Del. Sept. 30, 2021). *See also Fontana v. CSX Transp., Inc.*, 2025 WL 655803, at *1 (Del. Super. Ct. Feb. 28, 2025) ("CSX carries the burden of demonstrating preemption . . . .").

[100] *Insolvency Servs.*, 2021 WL 4477000, at *2.

[101] *Fontana v. CSX Transp., Inc.*, 330 A.3d 967, 981 (Del. Super. Ct. 2025).

unreasonably burdensome on the challenger; and (2) whether the law discriminates against the industry.[102] This is a fact-intensive inquiry, and "it is difficult to imagine a situation where a question regarding as-applied preemption could be resolved at the Rule 12(b)(6) stage."[103]

Just so here. U.S. Bank has presented no evidence at this stage, and thusly has failed to carry its burden at this time. Accordingly, it's too early to determine U.S. Bank's as-applied challenge.

## V. CONCLUSION

The Estate had capacity to initiate this lawsuit when it did. And, while it was likely unnecessary in the first place, the Estate has now obtained ancillary administration authorization (and, therefore, capacity) to maintain the action.

This Court has personal jurisdiction over U.S. Bank. The Delaware District Court's reasoning in *Life Ins. Corp. v. U.S. Bank, Nat'l Ass'n* –relating to the same alleged STOLI scheme and the same defendant party—is persuasive. U.S. Bank is also a proper defendant under the plain terms of § 2704(b). That Viva may ultimately be liable doesn't change that.

Finally, it is just too early to pass on U.S. Bank's preemption challenge.

---

[102] *Id*. at 982.

[103] *Id*. at 983.

Accordingly, Viva's and U.S. Bank's motions to dismiss are **DENIED**.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, Judge